Parker, J.
The first question made by the defendant’s counsel is upon the competency of Mr. Fuller as a witness; without whose testimony there would be no evidence of the delivery of the plaintiffs’ execution to any officer. This objection was taken at the trial, and, being overruled, the question is saved by the exceptions.
The incompetency of the witness is made to rest upon his liability, with his partner, to answer to the creditor for negligence in not delivering the execution seasonably to the sheriff or his deputy, in case the present suit is not maintained against the sheriff.
We are of opinion that this supposed liability does not affect'his competency; but he must be considered in the light of an agent, whose responsibility may affect his credit only with the jury, (a) The circumstance of his having endorsed the writ in the former action was adverted to. But this, not rendering him liable for the costs in the present suit, does not affect his competency.
It was also objected' that the new count ought not to have been received, because it changes the nature of the defence.
But there is no difference in the real grounds of the action. In the original count the defendant had notice of the particular facts, upon which the plaintiffs intended to charge him; and in the new count he is charged generally; but he must have known that it wag *229 through the instrumentality of his deputy, that he had become liable, if liable at all. (a)
* These preliminary questions being thus disposed [ * 247 ] of, we have now to consider whether, the facts proved constitute a legal ground of action against the sheriff.
The attachment of the ship by the defendant’s deputy, Webster, made him liable at all events for the value of that property, provided the plaintiffs were diligent in obtaining their judgment and execution, and delivering the latter to the officer who made the attachment, or to any other deputy of the same sheriff, or to the sheriff himself, unless, by some fault of the plaintiffs, they were unable to come at the property attached seasonably to serve the execution.
The creditor is no party to the receipt given for chattels attached, nor has he any interest in the contract made with the receiptor, who is responsible only to the officer ; unless the creditor has consented that the property attached should be delivered up to the debtor, or remain in his hands after the attachment; which is not suggested to have been the case in this instance. The officer is supposed to have in his own custody all goods and chattels attached upon mesne process during the pendency of the action, and until thirty days after judgment rendered; and if any loss happens in consequence of his bargains with the debtor, he must be the loser, for he parts with the property at his peril, (b)
Webster, therefore, by his return on the writ, had bound himself to levy the plaintiffs’ execution upon the ship attached, or to respond for her value if she could not be found. If he permitted the debtor to keep possession of her, and send her to sea, he must hazard all the consequences, and depend only on the contract he may have made with the friends of the debtor to indemnify him. In the case of a vessel, a receipt, with a promise to deliver it when wanted to satisfy the execution, can generally amount to nothing more than a promise to indemnify the officer for parting with property which he is bound by law to keep to satisfy a debt. For the object of such an interference is to send the vessel to sea; and even if she should return before execution is delivered to the officer, the probable diminution of * her value might still render [ * 248 ] the attaching officer liable in damages.
Before judgment was rendered, Webster had an opportunity to *230 discharge himself, by delivering to the attorney of the creditors the receipt for the ship. For if he had delivered it when requested by Mr. Fuller, and by any loches of this latter, the receiptor had been discharged, doubtless the claim of the plaintiffs upon Webster would have been defeated. But he agreed to be at Bath on the 23d of January, and there receive the execution, and cause it to be satisfied. He did not appear, however; and if he had, the vessel being gone to sea, a demand upon the receiptor would have been fruitless, as it respected the execution. The creditor’s right of action would have been established against Webster or the sheriff, and they must have looked to the person who had received the vessel. The nonperformance of this agreement to meet Mr. Fuller at Bath restored the liability of Webster for permitting the ship, which he had attached, to be removed, so that the execution could not be levied upon it; it being an agreed fact that the ship was not then within the precinct of the sheriff, and uncertain whether she had not been destroyed by the perils of the sea. The demand of the receipt, made by Mr. Fuller, when Webster had removed out of the county, was sufficient to put the latter upon his guard to call upon the receiptor, and to secure himself.
An actual delivery of the execution to Webster was not necessary to continue his liability ; for there was nothing upon which it could be levied; and the injury to the plaintiffs accrued when the ship was restored to the debtor.
But the execution was delivered seasonably to Wyman, another deputy, and had the ship been at Bath, where she had been attached, or any where within the body of the county, and within the control of the sheriff, she might have been seized by him upon the execution.
But it was argued, by the counsel for the defendant, that, when Webster called upon Stearns for the execution, and [ * 249 ] * could not get it, nor any information with whom it was left, he was released from any responsibility, not having it in his power to levy the execution.
This, however, is no excuse for him. If he had obtained the execution, he could have done nothing with it. He had possession of the receipt, and could have called upon the receiptor, as well without the execution as with it. At any rate, after having failed in his first engagement, it was his duty to have gone to the attorneys of the creditor for instruction. He knew that judgment had been rendered, and that execution was to have issued before the 23d of January; and he had information by letter that it had issued. He might also have looked up his brother deputy, Wyman, living in the same town where ffie ship ought to have been found; and he would *231 then have found the execution. But he appears to have been utterly careless of the event, probably relying altogether upon the receipt which he had taken for the ship.
With respect to the prior attachment at the suit of Otis If Dwight, it can in no respect affect this question. The attachment in that case, as in this, was merely formal, the ship never having gone out of the possession of the debtor. No lien is created by such fictitious attachments; and this second attachment, if it had been effectual, and the ship kept by the officer, would have superseded the former, even if Otis fy Dwight had afterwards attempted to levy their execution upon the ship, (a)
With regard to the subsequent attachments made by creditors of Jones Noyes, this is a mere question of damages. It having been decided that a second attachment upon property belonging to a company, for a debt of the company, should take place of a prior attachment upon the same property, made by a creditor of one of them, it would seem reasonable that, if the plaintiffs could have availed themselves only of the surplus, after paying the joint debts, if the ship had remained in custody to be sold upon their execution, they should recover no more of the sheriff than they * have lost by his neglect of duty. It would seem, also, [ * 250 ] that the interest of Noyes in the ship could not have been taken to satisfy the debt of Jones alone; so that, if one half of the ship was of less value than the sum recovered in damages, or if, after deducting the amount of the judgments recovered by the creditors of the company, there would not have been so much left as the amount of the present verdict, there ought to be a new trial. (b)
In order to save the expense of another trial, let there be affi davits of the value of the ship in January, 1809; and if it shall appear that there was sufficient interest in the ship liable to the demand of the plaintiffs, judgment is to be entered upon the verdict.

 Fisher vs. Willard, 13 Mass. Rep. 379.

 Haynes vs. Morgan, 3 Mass. Rep. 208. — Ball vs. Claffin, 5 Pick. 303. — Stone vs. Swift, 4 Pick. 389. — Swan & Al. vs. Nesmith & Al. 7 Pick. 220. — Tenny vs. Prince, 4 Pick. 385. — White vs. Snell, 5 Pick. 425. — Eaton vs. Whitaker, 6 Mass Rep. 465. — Clark vs. Lamb, 6 Pick. 512.

 Tyler vs. Ulmer, 12 Mass. Rep. 163. — Congdon vs. Cooper, 15 Mass. Rep. 10

 Lane & Al. vs. Jackson, 5 Mass. Rep. 157.— Train vs. Wellington, 12 Mass Rep. 495. — Lyman vs. Lyman, post, 317. — Knapp vs. Sprague, 9 Mass. Rep. 258. — Vinton vs. Bradford, 13 Mass. Rep. 114.

 Pierce vs. Jackson, 6 Mass. Rep. 242. —Fisk & Al. vs. Herrick and Trustees, 6 Mass. Rep. 271.— Goodwin vs. Richardson, post, 469. — Rite vs. Austin, 17 Mass. Rep. 197. — Lord vs. Baldwin, 6 Pick. 349. —Adams & Al. vs. Page, 7 Mass. Rep. 542.