## *The President &c. of the* COMMERCIAL BANK *vs.* WILKINS.

If several successive attachments be laid on the same goods, at the suit of several creditors, and the officer neglect to seize and sell them on any of the executions; and the last attaching creditor sues the officer for this neglect; the defendant may show that the judgment of the prior attaching creditors, to whom he is still liable, would absorb the whole value of the goods; and this, it seems, would constitute a good defence.

The mere insolvency of a copartnership is sufficient to defeat an attachment made by a creditor of one of the firm; although the partnership creditors have commenced no action for the recovery of their debts.

Therefore where an officer had attached the partnership effects, in a suit against one of the partners, and afterwards, with the consent of the firm, suffered the effects to be applied to pay a partnership debt due to a stranger; it was held that he was not responsible to the first attaching creditor, in an action for not having seised the goods in execution.

Although the effects were applied to pay a judgment against the firm, which included some demands not yet due and payable, yet this circumstance was held of no importance, the claim being good between the parties to the judgment, and resting, not on priority of attachment, but on the superiority of the plaintiff's title as a creditor of the partnership.

In such action against the officer, the partnership creditor is a competent witness for the defendant, having no interest either in the event of the cause, or in the record as an instrument of evidence.

THIS was an action of the case against the late sheriff of this county, for the alledged default of one *Fillebrown,* his deputy, in releasing certain personal property by him attached at the suit of the plaintiffs. It was tried before the Chief Justice, who reported the following facts. On the 24th day of *March,* 1826, *Ira Fish, George D. Varney* and *Isaac Wendall,* entered into partnership in the lumber business. On the 27th day of *December,* 1827, they jointly and severally promised, by their note, to pay $3,240 to the plaintiffs; on which note an action was commenced *April* 28, 1828, in which certain personal property was attached on the day following, by *Fillebrown,* subject to six prior attachments. Three of these actions were adjusted by the parties, before proceed-

ing to judgment.  Of the other three, one was brought by *A. & J. Wendall*, and another by *Asa Perkins*, against *Isaac Wendall*; and the third by *Mark L. Hill* against *Ira Fish*.  The plaintiffs recovered judgment in their suit at *June* term, 1829 ; and within thirty days placed their execution in the hands of *Fillebrown*, who returned it in no part satisfied.  The *Wendalls, Perkins* and *Hill*, recovered judgments in their suits, and placed their executions seasonably in the hands of *Fillebrown*, who never returned them.  It appeared that some monies had been indorsed as paid on each of these executions ; but it was admitted that the balance due on them was greater than the value of all the goods attached.

The counsel for the plaintiffs contended, that theirs was a partnership debt; and that therefore their attachment, though subsequent in time, had precedence in point of right, to all the others. The fact that it was a partnership debt was denied by the defendant ; and to this point there was evidence on both sides, which the Chief Justice left with the Jury, instructing them that if the claim of the plaintiffs was due from the partners as such, they ought to find for the plaintiffs, and assess damages to the amount of their judgment and interest.

It was further contended for the plaintiffs, that if *Fillebrown*, was ever liable to the three prior attaching creditors, for his neglect to apply the property towards satisfying their executions ; they must be considered as having, by their silence and delay, released or waived all claims for damages against him on account of such neglect.  This point of waiver or release the Chief Justice also left to the Jury, there being no direct evidence respecting it.

The defendant offered in evidence, a judgment recovered at *June* term, 1828, by *Fiske & Billings*, against *Ira Fish*, for $13,325, 37, and another against *Fish, Varney* and *Wendall*, for $15,995, 06, the latter including the same debt recovered in the former suit. In this latter suit, the same property was attached *May* 2, 1828, which the present plaintiffs had caused to be attached in their suit on the 27th day of *April* preceding.  And it was proved that the debt was justly due from the partnership of *Fish, Varney* and *Wendall*, to *Fiske & Billings*; and that the goods, so attached,

were afterwards sold by them at private sale, by the consent of *Fillebrown*, and the proceeds appropriated, by the consent of the firm, in part payment of the debt of *Fiske & Billings*. The defendant also offered the *affidavit* of his counsel, *Jona. P. Rogers*, Esq. which was admitted by the plaintiffs as proof of what Mr. *Fiske*, if a competent witness, would testify, he being then absent ; but which was objected to, on the ground that *Fiske*, was interested in the event of the cause, from the situation in which he and *Billings* were placed, in relation to the goods in question ; but the objection was overruled.

It was proved that in the judgment recovered by *Fiske & Billings*, against the partners, the sum of $6500, was included by consent of the parties, though it was not due and payable till after the action was commenced ; and that the partnership, at the time of the attachments, was insolvent.

Upon this evidence, and under the foregoing instructions of the Chief Justice, the jury returned a verdict for the defendant ; which was taken subject to the opinion of the Court upon the question whether the instructions and rulings of the Chief Justice were correct, and the action was maintainable.

*Allen*, for the plaintiffs, cited *Warren v. Leland*, 9 *Mass.* 265 ; *Rich v. Bell*, 16 *Mass.* 294 ; *Lane v. Jackson*, 5 *Mass.* 157, 164 ; *ib.* 399, 402 ; *Bailey v. French*, 2 *Pick.* 586 ; *Clark v. Foxcroft*, 7 *Greenl.* 348.

*Rogers*, for the defendant, cited *Knapp v. Sprague*, 9 *Mass.* 258 ; *Gardiner v. Hosmer*, 6 *Mass.* 325 ; *Simmons v. Bradford*, 15 *Mass.* 82 ; *Learned v. Bryant*, 13 *Mass.* 224 ; *Montague on Partn.* 99 ; *Pierce v. Jackson*, 6 *Mass.* 242 ; *Phillips v. Bridge*, 11 *Mass.* 242 ; *Goodwin v. Richardson*, *ib.* 469 ; *Hobart v Howard*, 9 *Mass.* 304 ; *Kingman v. Spurr*, 7 *Pick.* 235 ; *Fisk v. Herrick*, 6 *Mass.* 271 ; *Upham v. Naylor*, 9 *Mass.* 490 ; *Ex-parte Smith*, 16 *Johns.* 102 ; *Scott v. Scholey*, 8 *East.* 467 ; *Weld v. Bartlett*, 10 *Mass.* 470.

The opinion of the Court was read at the ensuing *September* term in *Lincoln*, as drawn up by

MELLEN C. J.    The jury have found that the note signed by *Ira Fish, George D. Varney* and *Isaac Wendall,* on the 27th of *December,* 1827, and payable to the *Commercial Bank,* was not given for a partnership debt; and therefore the attachment made by *Fillebrown,* on the 29th of *April,* 1828, in the plaintiff's suit upon that note, had no legal priority to the attachments made by the same officer, of the same property, in the three suits of *A. & J. Wendall v. Isaac Wendall; Asa Perkins v. the same,* and *Mark L. Hill v. Ira Fish,* subject to which attachments was that of the *Commercial Bank;* because they were all prior in point of time. The report states that judgments were duly recovered in all the four actions abovementioned; that executions were duly issued on all the judgments, and placed in the hands of *Fillebrown,* for service, within thirty days next after judgment; that the plaintiff's execution was returned in no part satisfied; and that the other three executions were never returned. The report also states that after allowing and deducting all payments made on the execution of *A. & J. Wendall v. Isaac Wendall ; Perkins v. the same ;* and *Hill v. Ira Fish,* there is a balance due on them, greater in amount than the value of all the goods attached in said suits. Therefore, admitting for the present that *Fillebrown* had a right to sell all the goods on those three executions, if he had sold them, it is evident that nothing would have remained to be applied towards satisfaction of the plaintiff's execution; and in such a case, the return of the Bank's execution in no part satisfied, would have occasioned no damage to the Bank, nor subjected the officer to any thing beyond a mere nominal liability. The reason is obvious. But *Fillebrown* did not sell the property which he had attached, on those executions or on either of them, towards payment of the debts due to the attaching creditors; and if he had a legal right so to sell them, then, by neglecting so to do, he at once rendered himself liable to those creditors to the full value of the property so attached, in the same manner as if he had sold the goods, but neglected legally to account for the proceeds; and, being thus responsible, as above supposed and stated, it is contended by the counsel for the

Commercial Bank v. Wilkins.

defendant, that *Fillebrown* cannot be held accountable to the plain-
tiff for the same property, and thus be twice chargeable for its
amount. In answer to this argument, and for the purpose of de-
stroying its force and effect, it was contended at the trial, as is sta-
ted in the report, that those three creditors, by their conduct and
delay, had released and waived all claim of damages against *Fille-
brown*, for his neglect to satisfy their executions out of the proper-
ty attached, as far as it would have satisfied them. But the jury,
to whom this question of implied release or waiver was submitted,
have by their verdict negatived the idea of any such release or
waiver. And now, on the principles of law assumed, why do not
the facts, thus stated, constitute a legal and decisive defence? In
the case of *Rich & al. v. Bell*, 16 *Mass.* 294, the facts were these.
*Bell*, a deputy sheriff, attached certain personal property of *Gulli-
ver*, at the suits of *Washburn* and twelve other creditors. On the
same day, several other creditors of *Gulliver*, the last of whom
were *Rich & al.* commenced their actions, and *Bell* attached the
same property in each suit. Between the time of the attachment
of *Washburn* and others, and the time when the last attachments
were made, an agreement was entered into between *Washburn* and
others and *Gulliver*, as to the disposition of the property attached;
and before the return day, all the attaching creditors, except *Rich
& al.* agreed that the property should be sold at auction, and *Bell*
sold it accordingly. *Rich & al.* contended that such proceedings
on the part of those creditors and *Bell*, amounted to a dissolution
of their prior attachments, and left the attachment of *Rich & al.* in
full force; and that so *Bell* was responsible to them in damages to
the amount of their demand. The court admitted, that the conduct
of the officer was contrary to law, and that he was liable in dama-
ges; but they observed that if he had kept the goods and sold them
upon execution, the plaintiffs would literally have gotten nothing;
and merely nominal damages were allowed. This case goes the
length of deciding that, in the case before us, the Bank could not,
at most, be entitled to recover any thing beyond nominal damages.
There is one particular in which the two cases differ. In *Rich &*

Commercial Bank *v.* Wilkins.

*al. v. Bell*, the conduct of *Bell*, which subjected him to nominal damages, was expressly assented to by the prior attaching creditors; and of course, he could never have been liable in damages to them; whereas, in the case at bar, the prior attaching creditors were not assenting to and approving the neglect of *Fillebrown*; nor have they ever released or waived their claim on him for damages for the consequences of it; and upon the foregoing facts, and according to the assumed principles on which we have thus far proceeded, he is to be considered as standing responsible to them in damages. Whether the foregoing distinction, and the other facts which remain to be examined, will relieve him from even nominal damages, will be a subject of inquiry in the course of this opinion.

It has been said by the counsel for the plaintiff, that the question of waiver, before mentioned, was a question of law, and should have been decided by the court. If there was proof of such waiver, it was of a circumstantial character, and we think the jury were the proper tribunal to draw inferences from any facts in relation to the point; but if we entertained any doubt as to the merits of this objection, it would not change our course of proceeding, or lead us to set aside the verdict on that account; inasmuch as, in our opinion, no facts exist in the case which would have authorised the jury or would now authorise the court to infer a release or waiver of the right of action of the first three attaching creditors against *Fillebrown*, if they had any such right. Again it has been urged that, as the demands of those three creditors were not against the firm, but only against two individual members of the firm, the property of *Varney* could not legally have been seized on either of those executions, but the same was liable to be seized on the execution of the Bank, because that ran against all three of the individual members of the firm; that of course the priority of the attachment of the creditors of *Isaac Wendall* and *Ira Fish* could not interfere with or impair the plaintiff's subsequent attachment, in respect to the property which belonged to *Varney*; and so, in this respect, the instruction of the presiding Judge was erroneous. On the other hand, it has been contended that, as the firm was deeply insolvent,

the bank had no right, in virtue of their execution, to seize one particle of the property of the firm ; in reply to which it is said by the counsel for the plaintiff, that for the same reason the three first attaching creditors had no right, by virtue of their executions against two of the firm, to seize one particle of the property of the firm : and that the consequence is that *Fillebrown's* neglect to sell the goods attached upon those executions, did not render him liable in damages to those creditors, and that in this view of the subject also the instruction of the presiding Judge was incorrect. If the objection above mentioned is good against the plaintiff's execution, it is equally so against the executions of the three first attaching creditors ; for neither of those executions, nor the plaintiff's was against the firm. If the officer, *Fillebrown*, had no legal authority by virtue of the execution of the plaintiff to seize and dispose of the property of the firm, he surely was guilty of no malfeasance or neglect of duty, and is not responsible in damages ; and this presents a sufficient defence against the action ; because it appears that at the time the plaintiff's action was commenced and the attachment was made, the firm was deeply insolvent. It is a well settled principle of law that a creditor of one of the members of a copartnership can claim only his just share, after all the partnership debts are paid. · 2 *Johns.* 280 ; *Goodwin v. Richardson & al.* 11 *Mass.* 469 ; *Upham v. Nash*, 9 *Mass.* 490. In *Fox v. Hanbury*, *Cowp.* 445, Lord *Mansfield* says, " no person deriving under a partner can be in a better condition than the partner himself ;" and he cites the opinion of Lord *Hardwicke* in *Skip v. Harwood*. " If a creditor of one partner take out execution against the partnership effects, he can only have the undivided share of his debtor, and must take it in the same manner the debtor himself had it, and subject to the rights of the other partner." And the same doctrine is laid down 4 *Vesey*, 396, where the court say, " the right of the separate creditor under the execution, depends upon the interest in the joint stock." In the matter of *Smith*, 16 *Johns.* 102, the court say, " where an execution is issued for the separate debt of one partner, it has been the constant practice to take the share which such partner has in

the partnership property ; but it has been settled, at least since the case of *Fox v. Hanbury, Cowp.* 445, that the sheriff can sell only the actual interest which such partner has in the partnership pro-perty, after the accounts are settled, or subject to the partnership debts. The sheriff therefore does not seize the partnership effects themselves, for the other partner has a right to retain them for pay-ment of the partnership debts." In *Moody v. Paine,* 2 *Johns. ch.* 548, the chancellor refused an injunction to stay execution till an account was taken ; saying that as the sheriff could sell only the interest of the one partner, subject to the rights of the partnership creditors, there would be no harm in suffering the separate creditor to go on at law ; for if any sacrifice should be made by reason of the uncertainty of that interest, it could only affect the separate creditor. Lord *Eldon* in the case of *Watson v. Taylor,* 2 *Ves. &* *Beame,* 299, 300, went further and said, that " if courts of law have followed courts of equity, in giving execution against partner-ship effects, I desire it to be understood that they do not appear to me to adhere to the principle, when they suppose that the interest (of one partner) can be sold, before it is ascertained what is the sub-ject of sale and purchase." In *Chapman v. Koops,* 3 *Bos. & Pul.* 288, it is stated by the court that by law the creditor of any one partner may take in execution that partner's interest in all the tan-gible property of the partnership, and will thereby become a tenant in common with the other partners ; but the officer cannot interfere with the property or effects themselves. *Church v. Knox,* 2 *Conn.* 516 ; *Cram v. French,* 1 *Wend.* 311 ; *Dunham v. Murdock,* 2 *Wend.* 554 ; *Gilmore v. N. A. Land Co.* 1 *Peters,* 460. But the levy under the execution transfers no joint property, but merely gives a right to an account. The joint property must be delivered from the joint debts ; and if the joint estate be insolvent, the separ-ate creditor cannot reap the fruits of his judgment. *Taylor v.* *Fields,* 4 *Ves.* 639. *S. C.* 15. *Ves.* 559, in note ; *Gow on Part-nership,* 224, 225. " If the sheriff be called upon to discharge his duty, he is bound to seize and sell whatever interest the individual partner may have in the joint property ; if he do not possess any

interest, the sheriff must return *nulla bona.*" *Gow* 226. In the above cited case of *Taylor v. Fields,* the sheriff had seized all the partnership effects under an execution against one of the partners ; and, on being indemnified by the joint creditors, gave up the partnership effects ; and the creditor of the separate partner, brought an action against the sheriff for a false return. On a bill filed, it appearing afterwards, on an account taken of the interest of the separate partner, that there was no balance due him, after payment of the partnership debts, a perpetual injunction was granted, to restrain the suit against the sheriff. In the case at bar, the insolvency of the firm proves, that the plaintiff's debtors had no interest in the property of the firm liable to the bank's execution.

In the case of *Lyndon v. Gorham & trustee,* 1 *Gallison* 367, *Story J.* says, " If upon the whole it appears that the judgment debtor had only a nominal interest, I do not think that a greater interest can be conveyed under the execution ; and, if the partnership be insolvent, that any interest can be conveyed." On this principle what could *Fillebrown* have sold on the plaintiff's execution ? What interest could have passed by the sale ? How could the plaintiff have been in any degree benefitted by the sale ? And why, in such circumstances, should he be considered as having acted contrary to his official duty ? In *Fisk v. Herrick & trustee,* 6 *Mass.* 271, the court say, " Before either partner can claim rightfully to his own use or for the payment of his debts, any of the partnership effects, the partnership must be solvent, and he must not be a debtor to it." As in that case it did not appear that it was solvent, the court would not adjudge *Willet* and *Bullard* as trustees of *Herrick,* one of the partners, merely because they were indebted to the firm. This case shows that the mere insolvency of a partnership is enough to defeat the claims of the creditors of one of the firm, though the creditors of the firm, have commenced no action, or in any manner asserted their claims. In *Pierce v. Jackson,* 6 *Mass.* 242, the facts were that an officer, who was the defendant, attached certain personal property in a suit against the firm of *Kentor v. Von Horten.* Afterwards, on the same day, he at-

tached the same property in an action against one of the firm ; and afterwards on the same day he attached the same in another action against the firm.. Judgment was recovered in all the actions, and executions were duly issued and delivered to the defendant within thirty days. The property was sold on the execution in the first suit ; and after satisfying that execution, a balance was remaining in his hands, which he applied towards satisfying the execution against one of the firm. The court decided that the surplus, according to the settled principles of law, in such cases, should be applied towards satisfying the last execution ; but as it appeared that the last judgment was fraudulent, they ordered a nonsuit. " It seems, therefore," the court observed in the last action, " very clear, that chattels which cannot lawfully be seized on execution, cannot lawfully be attached ; and as the right to seize chattels on execution remains as at common law, so must the right to attach by original writ depend on the common law, and therefore, the right of attachment, given to creditors, can have no influence on this question." In *Rice v. Austin,* 17 *Mass.* 197, it appeared that the defendant, as sheriff, had attached certain timber, which, he contended, was the property of *Lindsay,* and not of the plaintiff ; but if not wholly *Lindsay's,* still he contended that it belonged to the plaintiff and *Lindsay* as copartners. The court observed, " It does not follow necessarily that a creditor of *Lindsay* might lawfully take partnership property ; that must depend upon the solvency of the company ; and upon the question whether any surplus remained for the separate partners, after payment, of his debts to the company, and the debts of the company to the world." In that case it appeared that *Rice* was a large creditor of the firm, and that it was insolvent. Yet it does not appear that he had, or, indeed could have brought any action on his demand against the company. In *Phillips & al. v. Bridge,* 11 *Mass.* 242, the plaintiffs claimed damages for an alleged neglect of one of the defendant's deputies, in not satisfying an execution against *Jones,* one of the firm of *Jones* and *Noyes,* out of certain property attached. The same had been previously attached in a suit against the firm. The court said the defendant ought not

to be held to pay damages beyond the value of the property, after deducting the amount of the debt of the company.

From a review of the foregoing decisions, it seems to have been considered as a circumstance of no importance whether the creditors of the firm, where it was insolvent, had recovered judgment and were enforcing the collection of their demands; or had ever commenced actions for the purpose; or, if they had, in what stage those actions were, at the time of the decision; and in several of them, the claim of a creditor of one or more individual members of the firm, was resisted and disallowed, because it did not appear whether the firm was solvent or not. Such being the principles of law applicable to the present cause, merely in the view which we have thus far taken of it, we might close our opinion here, without an examination of the other grounds of defence on which the counsel for the defendant have relied. But it may be more satisfactory to the parties that we should express our opinion on all the points presented in the argument, and we therefore proceed.

It appears that *Fiske & Billings*, on the 2d of *May*, 1828, commenced an action against *Fish, Varney* and *Isaac Wendall*, and attached the same property which had been before attached in the suit of the bank against them; that at *June* term following, they recovered judgment in that action, for $15,995,06, for a debt justly due from the firm to the said *Fiske & Billings*; and that the goods so attached were afterwards sold by them at private sale, by the consent of *Fillebrown*, and the proceeds of the sale were by the consent of the said firm, appropriated in part payment of the debt so due to *Fiske & Billings*. This part of the defence is placed on the ground that the plaintiff's attachment, though prior in point of time, could not have, and did not have any legal operation as against *Fiske & Billings*, inasmuch as they were creditors of the firm, and that the debt due them must be paid out of the partnership property, as far as that property would go. This general principle of law is admitted to be correct; but it is contended by the plaintiff's counsel that *Fiske & Billings* could not avail themselves of the benefit of the principle in the manner in which they proceeded;

that the property should have been sold at auction on execution, and not voluntarily surrendered by *Fillebrown* into their possession and placed under their control. It cannot be denied, that if *Fiske & Billings* had placed their execution in the hands of another officer and he had demanded the property of *Fillebrown*, received it, and sold it on the execution, *Fillebrown* would have been justified in having given up the property for the purpose ; and, we apprehend, would have been answerable in damages had he refused so to do. Why then should *Fillebrown* be considered as having violated his duty in placing the property in the hands of *Fiske & Billings* for the purpose of sale and legal appropriation ; or why should they lose the benefit of the principle of law which entitled them to the property, merely by selling it themselves at private sale by the express consent of the owners of the property, and also of *Fillebrown?* · He proceeded on the presumed or well known fact, that the debt due to *Fiske & Billings* was a partnership debt. It was such a debt. But on this point we will advance no further ; having, in the preceding part of this opinion, anticipated most of the principles and authorities, which would otherwise, be properly applicable here.

We will now proceed to notice and examine some objections which have been urged against this branch of the defence. We do not consider the other judgment which was recovered by *Fiske & Billings*, at *June* term, 1828, against *Fish* only, as of any importance. It was for almost the same sum as that which was recovered against the three, composing the firm. Only that judgment is relied on. The reason of its existence was explained at the trial ; no fraud was proved respecting it ; certainly none was found by the jury ; and on no other ground can a judgment be collaterally examined. At any rate, the case finds that the whole amount of the judgment relied on, was due from the firm. It has been objected with some confidence that the judgment last mentioned is to be considered as void, in consequence of the addition of the sums of $6000 and $500, to the sums that were due when the judgment was recovered and therein included ; the above sums not being then due, nor till

---

some months after.   They were incorporated, however, by the express consent of the parties to the judgment.   As between them, the transaction was perfectly fair and honest.   In support of the objection the case of *Clark v. Foxcroft*, 7 *Greenl.* 348, has been cited.   It is true that in certain cases, such as that and those there mentioned, the introduction of a new cause of action, or the increase of the demand beyond its amount when the action was commenced, will operate to destroy an attachment and let in subsequent attachments ;  but the objection and the principle are not applicable here.   The plaintiff's attachment, though an ineffectual one, was prior to that of *Fiske & Billings.*   They did not claim a right to the property attached, by priority of attachment, but by priority of title, because their demand was against the firm.   Besides, for the reasons already assigned, we are satisfied that the rights of *Fiske & Billings,* in respect to the appropriation of the property attached, would have been the same, if their demand had not passed *in rem judicatam.*

The next objection which has been urged has reference to the admission of the affidavit of Mr. *Rogers,* as to the facts to which the above named *Fiske* would testify, if present ;  or in other words, the objection is, that *Fiske* was not a competent witness, but should have been excluded on the ground of interest.   We might at once dispose of this objection by saying that the testimony is of no importance, and that the defence is established by facts, proved by the records and other witnesses against whom no objection was made.   On this principle, we should not grant a new trial, even if we were satisfied that the testimony was inadmissible.   But we are of opinion that the objection is not well founded.   The principle of law on the subject of incompetency of witnesses on the ground of interest is stated in these words in 2 *Stark. Evid.* 744.   "The interest to disqualify must be some legal, certain and immediate interest, however minute, in the result of the cause, or in the record, as an instrument of evidence, acquired without fraud."   Now as *Fiske & Billings* have in their hands the proceeds of the goods attached, and which they claim a right to hold, nothing can be more

clear than the position, that if *Fillebrown*, or the firm, should commence an action against them to draw the money out of their hands, the verdict and judgment in the present action, would not be legal evidence on the part of *Fiske & Billings*, to sustain the defence. On this ground *Fiske* could not have been inadmissible on account of having any interest in the record. No direct and certain advantage could result to him by reason of a decision of the cause in favor of the defendant. 2 *Stark.* 746. It materially differs from the cases of *Schillinger v. McCann*, 6 *Greenl.* 364, and *Pingree v. Warren*, *ib.* 457. In those cases, a decision of the cause in favor of the party calling the witness, would have secured to him a certain advantage, or shielded him from a certain loss. But beyond this, it appears by the report, as before observed, that the property attached was sold and appropriated in payment of the debt due from the firm to *Fiske & Billings* by the express consent of *Fillebrown* and the firm. On what principle, then, should either of them be permitted to recover the money back? Could *Fillebrown* maintain an action for the money? He placed the property in the hands and under the control of *Fiske & Billings*, and would the law imply a promise on their part to pay to him the proceeds of the sale, to indemnify him for doing an act, if it was unlawful and a violation of his official duty, and from the consequences of such act? 5 *Mass.* 385; *ib.* 541. 4 *Mass.* 370. Could the firm maintain any action after they had assented to the receipt of the proceeds of the lumber by *Fiske & Billings*, and an appropriation of such proceeds in payment of a debt they owed to *Fiske & Billings*? A recovery of judgment by the plaintiffs in such an action would seem to be a legal anomaly. Besides, an action brought either by the company or by *Fillebrown*, might be effectually resisted by showing, in the defence, that the proceeds of the lumber had been appropriated in exact accordance with legal principles, as well as the agreement of all concerned. Could any other creditor of the company, or of any one or more of the members of the company maintain a trustee process against *Fiske & Billings*? Certainly not. A disclosure, showing the nature and amount of their

claim originally against the company, and of their right to the proceeds of the lumber in their hands, and the insolvency of the company, would at once present a legal ground on which they must be discharged.                    *Judgment on the verdict.*

*Weston J.* being related to *Fillebrown,* the defendant in interest, did not sit in this cause.