## Case No. 5,689.

### GRANON v. HARTSHORNE.

[Blatchf. & H. 454.] [1]

District Court, S. D. New York.   Dec. 7, 1834.

WAGES OF SEAMEN—SHIPPING ARTICLES—BURDEN OF PROOF—END OF VOYAGE.

1. In a suit for seamen's wages, the proctor for the libellant, though not legally incompetent as a witness for his client, has a bias which is to be regarded in weighing the credit to be given to his testimony.

2. A stipulation in the shipping articles, that the seamen shall not sue for wages until the vessel is unladen, is binding upon them, if it is fairly made.

3. Under such a stipulation, the libellant, in a suit for wages, has the burden of proving that the vessel was actually unladen when the libel was filed, or had then been moored fifteen days.

4. Where an action in personam for wages is brought prematurely, but becomes perfected before the stipulations and answer of the respondent are filed, and the answer, when filed, admits a right of action in the libellant, the court need not dismiss the libel; yet, if the suit is vindictive or unreasonably prosecuted, costs may be imposed on the libellant.

[Cited in The Grace Darling, Case No. 5,651.]

5. The case of The Cadmus [Case No. 2,280] considered.

6. The voyage ends when the vessel is safely moored at her port of final destination.

[Cited in The Annie M. Smull, Case No. 423.]

7. A stipulation in the shipping articles not to sue for wages until the vessel is unladen, is not an extension of the voyage; and, if a seaman

1 [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

leaves her, without permission, after she is moored, but before her unlivery, that is not a desertion which works a forfeiture of wages under the act of July 20, 1790 (1 Stat. 131, 133).

[Cited in The Frank C. Barker, 19 Fed. 333.]

This was a libel in personam, by a steward [Lewis Granon] against the master [Richard T. Hartshorne] for wages. The vessel reached New York harbor on the 14th of April, 1834, and got into her berth at the dock on the 15th. The libellant left her on the 16th, and on the 24th filed this libel. The answer admitted that $42 remained unpaid on his wages, after deducting credits claimed, but set up, as a defence on the merits, that the libellant had forfeited his wages, by deserting the vessel at New York. It also set up a dilatory exception, that the libellant's right of action had not matured when the suit was instituted, the vessel not being then unladen, and set forth an agreement in the shipping articles, signed by all the crew, that the mariners should not be entitled to wages until the vessel was unladen.

Elijah Paine, for libellant.
Thomas W. Tucker, for respondent.

BETTS, District Judge. This suit has been contested on both sides with great acrimony, and at an expense disproportioned to the amount in dispute or the importance of the case. The action is prosecuted for the recovery of wages alleged to be earned and due on a voyage from New York to Liverpool and back. The vessel was safely moored at her dock in New York, on the 15th of April, having come into the harbor the day previous. This was her port of final destination and discharge. The result of the rather confused testimony on both sides is, that the crew, with the exception of the libellant and one other person, were paid off, and permitted by the master to leave the vessel on the 15th, the day she was brought into her berth; but it does not clearly appear that an express discharge was given to any one. The evidence is conflicting as to whether the master prohibited the libellant from leaving the vessel with the rest of the crew. The libellant's proctor offered himself as a witness to prove declarations or admissions by the respondent, which, it was urged, amounted to proof of his assent that the libellant might leave the ship when the others did. The evidence of the proctor was objected to as inadmissible; and, if it stood alone, it certainly would command but slender credit. No court could receive it otherwise than with hesitancy and distrust. But, I do not find that the common law of England or of this country has declared an attorney an incompetent witness for his client in the particular suit in which he is acting as such attorney. This was the doctrine of the civil law—mandatis, cavetur ut praesides attendant, ne patroni in causa cui patrocinium praestiterunt testimonium dicant (Dig. lib. 22, tit. 5, § 25); and it is recognized in the French

tribunals. Pothier asserts that, because of partiality, the testimony of an advocate or attorney is not admissible in favor of his client. Traité des Oblig. p. 619, pt. 4, 827, tom. 3. This might prove a wholesome rule of practice with the American courts, as tending to maintain the dignity and purity of the administration of justice. But the relation is not classed, by standard writers, with the legal disqualifications of a witness (1 Gilb. Ev., 6th Ed., 106–142; 2 Starkie, Ev., Bost. Ed., tit. "Interested Witnesses"; 3 Bac. Abr. "Evidence," B.; Esp. N. P. pt. 3); and the objection is discountenanced by adjudications of high authority in the United States (Brandigee v. Hale, 13 Johns. 125; Chaffee v. Thomas, 7 Cow. 358; Miles v. O'Hara, 1 Serg. & R. 32; Reid v. Colcock, 1 Nott & McC. 592; Phillips v. Bridge, 11 Mass. 242). In no way can such testimony be presented in a more exceptionable, not to say repulsive aspect, than in the present instance, where the statement of the master appears to have been drawn from him surreptitiously, as it were, by the contrivance and address of the proctor, with the intent, on his part, to volunteer as a witness to prove the declarations so obtained. The proctor testifies to answers to his interrogatories given by the respondent when under examination as a witness in another cause. It is not made to appear that the questions or answers were any way material in that case, nor that the attention of the respondent was drawn to the meaning put upon his statements by the attorney who examined him. A subtle and ambiguous interrogatory, propounded by an unscrupulous man, might entrap a party into statements to which the attorney could affix an import quite foreign from the intention and meaning of the witness. The temptation to practise such stratagems may be kept from reaching any member of the profession, if it becomes understood that he must be regarded in the position of a discredited witness, and can have no weight unless his testimony be supported. Admitting that the relation of a proctor to his client and the cause, and the slight chance of his securing a remuneration from a common sailor for services and advances in his suit otherwise than by securing a judgment against the other party, do not amount to a fixed pecuniary interest in the event of the cause, which disqualifies him from testifying for his client, still, the bias is so manifest and pressing, that small confidence can be placed in his representation or interpretation of declarations of the opposite party, either overheard or sought for and wormed out by him. The court is often pained to see petty actions taken up and managed by proctors with a rancorous and overreaching spirit, fully in keeping with that manifested by their clients; and, in order that this disposition may not be inflamed by mingling the proctor's evidence in the proceedings, I am anxious it should be understood, that the un-

supported testimony of a proctor for his client weighs very lightly in this court, and that the practice, on the part of proctors, of supporting, by their own evidence, cases they are conducting professionally, will be discountenanced by every means compatible with the law. In the present instance, the testimony of the proctor might be regarded as being corroborated by the facts, that the master paid wages to the other seamen and allowed them to leave the vessel, and that it does not appear there remained any ship's duty for the libellant to perform when he absented himself. In such case, it would be reasonable to imply that he was tacitly included in the permission to quit the vessel. The fact of a discharge need not be proved by any direct evidence, but may be inferred from circumstances; and, ordinarily, the payment of the other seamen, or permission to them to leave the vessel, will be regarded as a general discharge of the crew. Edwards v. The Susan [Case No. 4,299]; Dixon v. The Cyrus [Id. 3,930]. The presumption is, however, overborne, in the present case, by the testimony of the mates, who swear that the master refused to allow the libellant to go with the other men, and was not present at the time he departed after they had left. The stipulation in the shipping articles, postponing the right to wages until the vessel was unladen, cannot be pronounced unconscientious or circumventing in respect to the sailors. It has an immediate connection with their ordinary engagement to the vessel, and operates, in effect, but as a prolongation of their shipping term, and, as an incident thereto, delays the recovery of their wages until the vessel is unladen, or until the fifteen days allowed by the statute for that purpose have expired. The Martha [Id. 9,144]. Such a stipulation would probably not operate to their loss or disadvantage, for they might insist on remaining with the vessel during the time, and would thus be entitled to support and wages until its expiration.

The weight of evidence being, that the libellant was not discharged from the vessel, he was bound by the stipulation in the articles; and, as the libel was filed only nine days after the voyage was ended, the exception taken in the answer to the libellant's present right of action, becomes technically well founded. If this objection was supported by any show of reason for exacting from the libellant the delay of his suit, the respondent might, upon the strength of it, be entitled to turn him out of court, with costs. But the answer does not allege, nor does the proof show, that the master claimed any duty of the libellant on ship-board, or that the vessel required his services. The refusal to him of permission to go with the crew would, therefore, seem to have been arbitrary on the part of the master, and was probably vindictive and designed to coerce the libellant to pursue some course resisted by him, or to lead him to commit some act prejudicial to the ultimate recovery of his wages. The latter motive is inferable from the attempt of the master to fasten a forfeiture of wages on the libellant because of his leaving the vessel; and there is evidence in this case that the master was willing to consent to the libellant's leaving the ship upon condition that he would execute a release of all causes of action against him. This conduct of the master takes from him all claim to the favor of the court. He is entitled to the strict legal effect of his exceptions, and to nothing more.

The libellant only proves that the vessel was in process of unlading when his libel was filed. The respondent does not assert that she remained unladen when his answer was put in. If that was the fact, yet fifteen days had then elapsed, and it will be presumed, in the absence of clear proof to the contrary, that there was ample time, in that period, to discharge the cargo. The Martha [supra]. When the respondent, then, submits himself to the jurisdiction of the court, as he does by his stipulations and answer, and admits, in his answer, that a balance of wages is due the libellant, the court is relieved from the necessity of decreeing a dismissal of the suit and compelling the libellant to renew his action. It is clearly competent to an admiralty court, and it is believed to be a usual course of procedure in that tribunal, to act upon the merits of the case as it stands when the cause comes to contestation. See The Edward [Case No. 4,289]. To preserve order in its proceedings, and due respect to the rights of the suitors who are subject to its process, it will undoubtedly, by awarding or withholding costs, or by a summary discharge of the action, check the irregularity of commencing suits before the right of action is fully matured. To do that effectually, it is not necessary to surcease the consideration of the merits, when they are placed in issue upon the pleadings, and to turn the promovent out of court, merely to compel him to perform the ceremony of beginning his suit in due time. If, then, the question rested upon the fact that, on a peremptory refusal by the master to pay the wages which he admitted to be earned, the libellant unadvisedly and erroneously brought his action therefor nine days after the voyage was ended, when he ought to have delayed it six days longer, it would seem to be fit and appropriate, when the fifteen days have run out, or the cargo is unladen, to allow the action to proceed, as no wrong would be sustained by the respondent. And, ordinarily, this would be permitted without imposing costs because of an irregularity, merely technical, in commencing the action. The respondent, however, having given evidence that, after the libel was filed, but before the vessel was unladen or the fifteen days had expired, he offered to pay the wages, and that the proctor for the libellant refused to accept them because his libel was

already filed, entitles himself to an indemnity against the costs or the injury which he may have incurred because of the captiousness or precipitancy of the party in urging forward the action. Had application then been made by the respondent, to be discharged from the action, the court would no doubt have stopped the proceedings, with costs to him. But, since he elected to file stipulations sistere in judicio et solvere judicium, and to interpose a full defence by formal answer, after the fault was known to him, the irregularity in commencing the suit may be regarded as substantially waived, and the case be acted upon as if it was instituted at the time the defence was taken. Accordingly, the only redress the respondent can reasonably claim, is to be relieved of the costs improperly created previously to his offer to satisfy the demand. Those costs will be imposed upon the libellant.

The merits of the defence made by the answer are, that the libellant has forfeited his entire wages by desertion; and the respondent insists that the decision of the circuit court in the case of The Cadmus [Id. 2,280] has settled the law upon this point in his favor, and determined that every unauthorized abandonment of a vessel by a seaman is a desertion which necessarily works a forfeiture of wages. That case, as adjudged by the circuit court, must, until reversed by the supreme court, supply the rule of decision to this court. I am not in possession of the reasons upon which that judgment was based, but I am persuaded that the learned judge did not, as was urged on this argument, intend to abrogate the rule of the law maritime in respect to the constituents or consequences of the offence of desertion, nor to hold that every wilful and clandestine departure from a vessel by a seaman, proved by oral evidence alone, is the offence of desertion described in the act of congress of July 20, 1790 (1 Stat. 131, 133), and must incur the punishment therein prescribed. On the contrary, I conceive that admiralty courts can exercise a discretion in the punishment of the common law offence, so to term it, and are not obliged to impose the single penalty of forfeiture of wages and effects. See The Cadmus [supra]; The Martha [Case No. 9,144]; The Elizabeth Frith [Id. 4,361]. The cases are clear to show that maritime courts have always claimed and exercised the power to graduate the abstraction or forfeiture of wages conformably to the character of the fault, and have never felt constrained to levy the absolute and extreme decree of entire confiscation for every wrongful abandonment of a vessel by seamen.

But, whatever may be the rule where the act is committed before the vessel arrives at her port of final discharge, the voyage, in this instance, had been already fully performed. The ship had reached her port of final destination, and was safely moored at her berth. This terminated the voyage and all sea services on board connected therewith. Such has been the rule in this court, and such, it is believed, is the sound interpretation of the law maritime. The Martha [supra]; The Cadmus [supra]; Brown v. Jones [Case No. 2,017]. The engagement to serve upon a vessel in port is not a contract maritime in its character, or clothed with the privileges or liabilities of one, without the element of being connected with a sea service; much less can it be claimed as appertaining to a past voyage. It is matter of personal agreement, and no more becomes part of the contract for the voyage, by being inserted in the shipping articles, than if it were made outside of that agreement. It is a common practice to engage mates, carpenters, and probably cooks and stewards, to remain with a vessel after the voyage for which they ship is terminated, pending her being repaired, or her relading, or her seeking a new voyage; and this duty may be incident to their shipping contract. The Baltic Merchant, Edw. Adm. 86. But there is no case intimating that their nonfulfilment of such subsidiary agreement will cause the forfeiture of their earnings during the concluded voyage.

The respondent relies upon parol proof alone to establish the desertion charged. He produces no entry in his log-book, nor does he attempt to show that the act of the libellant was entered there, or that it was complained of at the time as a fault. Indeed, it would appear, from the scope of the proofs, that no person was proposed to be retained in the vessel other than the libellant. Under these circumstances, the fault committed by him would be regarded as of the most venial character, and as justifying but a very moderate fine, if the respondent had made it appear that he was in earnest in refusing the man a discharge. But I am satisfied he was actuated by the purpose of obtaining from him a release or acquittance of the vessel or her officers from some prosecution threatened by the libellant, and by no desire to hold him to the contract set up. The subsequent offer by the master to pay the libellant's wages, imports that he was conscious he was acting unjustly and oppressively towards the libellant in withholding them and in endeavoring to exact a release from him. In my opinion, no legal cause is shown for claiming a forfeiture of the wages, and I shall decree that the libellant recover them in full. A reference may be had to the clerk, to ascertain the amount justly due. But for the offer to pay the wages, made by the respondent, in apparent good faith, before the suit was instituted, I should order each party to pay his own costs. But, as the libellant was irregular in bringing his suit in violation of his contract, and refused to accept his wages without litigation, I shall decree full costs to the respondent. The taxed bill is to be

deducted from the amount of wages reported due, and the balance, if any, is to be paid to the libellant. Decree accordingly.