## NATHANIEL HIGGINS *vs.* JOSEPH KENDRICK.

It is the duty of a *Constable*, who has attached personal property on mesne process, to deliver it over to a *deputy sheriff*, having the execution issued in the same case, on his making a demand of the property within thirty days after judgment; although such constable be in office, and be authorized to serve the execution.

And if the constable has permitted the property to go back into the possession of the debtor on receiving a receipt therefor from a person, then considered good, procured by the debtor, and the receipter had failed and the property could not be found, when the demand was made; the constable is still liable to the creditor for the value of the property.

Nor can any reduction be made in the amount of damages on account of the keeping of the property, where the expense was incurred by the debtor, and not by the officer.

An offer by the debtor to the *creditor* to give other receipters, and a refusal on his part to take them, furnish no defence to the constable, unless the creditor had accepted the receipt, as a substitute for the liability of the officer.

THIS was an action on the case, against the defendant, as Constable of *Bangor*, for not keeping property by him taken on a writ, at the suit of the plaintiff, to respond the judgment rendered thereon. It was admitted, that the plaintiff sued out an original writ against one *Caleb Shaw, jr.*; that the defendant served the writ, and returned as attached thereon a yoke of oxen; that judgment was rendered in that suit in favor of the plaintiff, at the *January* term of the Court of Common Pleas for this county, 1834, for less than 100 dollars; that within thirty days after the rendition of that judgment, execution duly issued thereon, and was put into the hands of *J. W. Carr*, a deputy of the Sheriff of this county, for service, who testified, that on the 12th of *February*, 1834, which was also within thirty days of the judgment, he, then having the execution, demanded the oxen attached on the writ, of the defendant, then remaining Constable of *Bangor*, who neglected to deliver them.

For the defendant, *John Marshall* testified, that on the 18th of *October*, 1832, the plaintiff, the defendant and *Caleb Shaw, jr.* called at his store, when *Shaw* requested to become with him a receipter to the officer, the defendant, for his oxen then attached, to which he acceded, and signed with *Shaw* a receipt, promising to deliver the oxen to *Kendrick* or bearer on demand, and that a demand was made *June* 27, 1833; that the plaintiff was present, and must

have seen what was done, and made no objection; that he, the witness, owed *Shaw* about $100, and that besides that and the oxen, he did not know that *Shaw* had any other property; that he himself was in credit then; having 5 or $6000 worth of goods in his store; that on the 8th of *June*, 1833, two of his creditors, to whom he owed $1000 each, attached his goods and shut up his store, whereupon that night, or the next day, he assigned all his property to *Milford P. Norton, Esq.* for the benefit of his other creditors, who, however, have not expressed their assent to the assignment; that he enjoined no secrecy on his assignee, although he should not himself at the time have stated to his creditors what disposition he had made of his property, and that after that time he had been insolvent, and had no property that could be attached. He further testified, that the plaintiff frequently spoke to him about his being receipter; the first time within a few days after he had become such; that the winter after the receipt, but before judgment, the plaintiff called on him, told him *Shaw* was good for nothing, and he would have to pay the receipt, and wanted him to permit the plaintiff then to take up goods on that account, which the witness declined. *Caleb Shaw, jr.* testified, that after his oxen were attached, the plaintiff and defendant both advised him to get a receipter, that they all went together to *Marshall's* store, and when the receipt was signed, the plaintiff was present, and made no objection; that not long afterwards, and before judgment, *Marshall* applied to him to get him discharged from the receipt; that he accordingly went to the plaintiff, and proposed giving other receipters, and proposed to go to the defendant and get it done, but that the plaintiff objected, and said he had got a good receipter, and would not release him. The counsel for the defendant contended, 1. That upon these facts, the defendant was not liable; but, 2. If he was, the expense of keeping the oxen, from the attachment to the judgment, which ought to be allowed him, would have been equal to their value. *Weston C. J.* instructed the jury, that the defendant was liable in this action, upon the facts, and that he was not entitled to be allowed any expense for keeping the oxen, which he did not incur. The jury returned their verdict for the plaintiff. If they were erroneously instructed the verdict is to be set aside, and a new trial granted.

*Kent,* for the defendant, contended : —

1. The defendant is not liable, because the execution was not delivered *to him* within thirty days after judgment, he being still a Constable, and having power to serve the execution.

The officer attaching property is in no case liable to the creditor for not keeping it, unless the execution shall be put into his hands within thirty days, so that he can levy upon it. While he remains in office, he is not liable by a simple demand by the creditor or any other person. *Blake* v. *Shaw,* 7 *Mass. R.* 505 ; and in *Harrington* v. *Ward,* 9 *Mass. R.* 251, 252, the same position is taken in argument, and not denied by the Court. In all the cases found, where the officer was held liable for this cause, he was either out of office, or the execution was delivered to him. This remark does not apply to the case of a Sheriff and his own deputies, who are in law considered the same. The officer is liable to the debtor, and to after attaching creditors, unless the property be appropriated legally in satisfaction of the first. Is the attaching officer to be made responsible for the acts of the one to whom the property is delivered, if he misapply the property ; or shall such delivery over excuse him ? It is a familiar principle, that where one officer has attached personal property, no other can take it out of his hands by another attachment. These principles are all opposed to the attempt made in this case. *Walker* v. *Foxcroft,* 2 *Greenl.* 270 ; *Blake* v. *Shaw,* before cited ; *Thompson* v. *Marsh,* 14 *Mass. R.* 269.

2. The plaintiff assented to the defendant's taking this receipt, and to the debtor, or his friends, keeping the property ; and cannot now hold the defendant liable for the loss occasioned thereby. *Cooper* v. *Mowry,* 16 *Mass. R.* 8 ; *Twombly* v. *Hunnewell,* 2 *Greenl.* 224.

3. By his subsequent conduct, the defendant assumed a control over the receipt, and treated it as his own, and prevented the defendant from taking a new one, or securing himself from loss, and should now bear it himself.

4. This is an action for damages for the defendant's neglect in not keeping the oxen, so that they might be taken on execution. He is not entitled to receive more damages, than he has sustained. The receipter was a man of property, when the receipt was taken,

and failed before judgment.  If the officer must bear this loss, then the plaintiff is entitled to recover of the defendant only' so much as the oxen would have given him, if the officer had kept them, and delivered them over on demand made.  The keeping then would surely be a charge upon the oxen, and it should be now.  It is a well settled rule of law, in the case of bail, that actual damages only can be recovered.  *Hodsdon* v. *Wilkins,* 7 *Greenl.* 113. This very question has been before the Court in *New Hampshire,* and decided in our favor.  *Runlett* v. *Bell,* 5 *N. H. Rep.* 433.

*Rogers,* for the plaintiff, argued, that it was not necessary, that the execution should be delivered to the same officer, who served the writ; that although it might be true, that the Sheriff and any one of his deputies might be considered the same, that different deputies of the same Sheriff were distinct, as much as a deputy and a constable; and that to charge an officer, who had attached property, it was only necessary to deliver the execution to some person authorized to serve it, and that he should demand the property within thirty days.  *Phillips* v. *Bridge,* 11 *Mass. R.* 242; *Start* v. *Sherwin,* 1 *Pick.* 521; *Ludden* v. *Leavitt,* 9 *Mass. R.* 104; *Sewall* v. *Mattoon,* 9 *Mass. R.* 535; *Tyler* v. *Ulmer,* 12 *Mass. R.* 163; *Webster* v. *Coffin,* 14 *Mass. R.* 196.

The plaintiff had nothing to do in taking a receipter.  It was wholly a matter of the officer's, and the officer might take the property into his own hands whenever he pleased.  The refusal of the creditor to take a new receipter, did not prevent the defendant from doing it.  The mere knowledge by the plaintiff of the doings of the officer, cannot excuse him, though perhaps directions to him what to do might have done so.  The cases in relation to bail have no application, as in that case the officer is by law obliged to take bail, but has the option to take a receipt or refuse it, when property is attached.  It would seem from the case cited from *New Hampshire,* that the officer is there obliged by law to take a receipter, if offered, and if so, would very properly stand like bail.

The same question, as to damages, has been at least twice made, and twice rejected by the Court.  *Tyler* v. *Ulmer,* 12 *Mass. R.* 163; *Sewall* v. *Mattoon,* 9 *Mass. R.* 535.

After a continuance, the opinion of the Court was drawn up by

Weston C. J. — The defendant, as Constable of *Bangor*, having on the plaintiff's writ attached a yoke of oxen, was bound to keep them until taken in execution, or until the attachment was dissolved. For the service of the writ, he was entitled to his legal fees, and for keeping the oxen, a reasonable compensation. That fully satisfied all his claims. We are not now considering rights and liabilities, arising from subsequent attachments. It does not appear that there were any other. The defendant had a right to keep the property, until he could discharge himself of his responsibility to the creditor or debtor, depending on the termination of the suit. When he had it in his power to do that, a further detention on his part, could not be justified.

When called upon by *Carr*, the deputy, who had the execution, to deliver up the oxen to him, to be taken thereon, within thirty days after the rendition of judgment, if he had done so, he would have discharged his official duty, and relieved himself from liability. We cannot find, that the creditor was under any legal obligation to employ him to serve the execution. If not called upon for the property, within thirty days after judgment, unless he had put it out of his power to produce it, he might have a claim to be discharged. In this case, he had parted with the oxen, and did not succeed in reclaiming them, although he demanded them of his receipter, some months before judgment, as appears by an indorsement on the receipt. If then, the execution had been put into his hands, he could not have taken to satisfy it, the property attached.

The same objection was taken in *Phillips et al.* v. *Bridge*, 11 *Mass. R.* 242. The attachment, under consideration there, was made by *Webster*, a deputy of the defendant, and although *Webster* was still in office, the execution was delivered to *Wyman*, another deputy, with notice of the attachment. There as well as here, the property had been delivered to a receipter, and had disappeared. But the Court held, that the delivery of the execution seasonably to *Wyman*, *Webster* having notice that it had issued, and being called upon for the property, was sufficient to charge both *Webster*, and the defendant, his principal. The Court say in that case, that an actual delivery of the execution to *Webster*, was not necessary to continue his liability; for there was nothing, upon which it could

be levied. And further, that "the execution was seasonably delivered to *Wyman*, another deputy, and had the ship been at *Bath*, where she had been attached, or any where within the body of the county, and within the control of the Sheriff, she might have been seised on execution."

The contract made with the receipter, is an affair between him and the officer. The creditor has no interest in it; but the officer acts at his peril. The creditor was present, when the receipt was taken, and made no objection. He could make none. Before the judgment, the creditor would have taken his pay of the receipter; had he done so, the officer would have been discharged; but the receipter was unwilling to pay. He wanted the debtor to procure another receipter, that he might be relieved. And the debtor went to the plaintiff, and proposed to give other receipters, but the plaintiff was unwilling to consent to it. He should have gone to the officer. It was for him, and him alone, to accede to his proposition. The creditor had no control over the receipt. If it had appeared affirmatively, that he had accepted it, as a substitute for the liability of the officer, he ought to be bound by such an election. But it does not appear. There is no evidence of any negotiation or understanding between him and the officer. The latter bestirred himself to endeavor to obtain the property, after the failure of the receipter; but it was too late.

With regard to the claim of the officer, to be allowed what it would have cost to keep the oxen, an expense which he *did not* incur, the decision of the Court was directly against such an allowance, in the case of *Tyler* v. *Ulmer*, 12 *Mass. R.* 163. It is an authority in point; and we perceive no reason why we should depart from it.

*Judgment on the verdict.*