ALBANY,
January, 1819.

Matter of
SMITH.

———◄◈❋◈►———

In the matter of PETER S. SMITH, an absconding debtor.

An attachment under the act for relief against absent and absconding debtors, (1 *N. R. L.* 157.) may issue against the separate property of one of several partners, who absconds, for a debt due from the co-partnership, or for the separate debt of such partner. But the sheriff can seize only the separate property of the absconding partner: He cannot take the partnership effects; for the other partner has a right to retain them for the payment of the partnership debts. The *trustees* to be appointed under the act become vested only with the *interest* of the absconding partner, or his proportion of the *surplus* of the joint property remaining after payment of the partnership debts.

BY virtue of a warrant of *attachment*, issued by *N. Williams, commissioner*, under the *act for relief against absent and absconding debtors*, (1 *N. R. L.* 157.) the sheriff of *Ontario* seized sundry *goods*, wares, and merchandizes, belonging to *P. S. Smith* and *William Soulden*, who were partners in trade, and which, at the time of seizure, were in the hands of *Trueman Smith*, in a store, occupied for the purpose, at *Geneva*, where he was selling them, for the account of *Smith & Soulden* ; also, the *books of account* in the same store, and 146 dollars and 73 cents, in *cash*, belonging to *S. & S.*

Under a second attachment, directed to the sheriff of *Oneida*, the sheriff of that county seized the *books of account* and *papers* of *S. & S.* as copartners, and also claimed *goods* belonging to *S. & S.*, so far as they could be held under the attachment, they being already subject to an execution issued against *S. & S.* at the suit of *Thomas Beekman*.

One of the attachments was for the separate debt of *Peter S. Smith*, and the other for the partnership debt of *S. & S.*

*Talcot*, in behalf of *Soulden & Smith*, moved to set aside the attachments, and that the property taken by the sheriffs under them, be restored.

He contended, that the attachments, on the face of them, were irregular. The sheriff is commanded to attach, not only the property of *Smith*, but all the property, real and personal, of *S. & S.* If any attachment would lie at all, it can only be against the separate property of the absconding debtor. The books of account, and papers, have also been taken.

But the act does not contemplate the issuing of an attachment in the case of *partners*, where one absconds, but the other remains within the state. It speaks throughout of an individual debtor. The case of a vessel, mentioned in the 21st section of the act, is the only one in which the legislature appear to have thought that partnership property was to be taken; and it is provided, that if any person shall give security for the appraised value, the vessel is to be discharged. If the act is applicable to this case, it must be equally so in the case where one of several partners is *absent* or resident abroad; and it will be in the power of a creditor, to the amount of one hundred dollars, to break up the most respectable commercial house in the state. It is true, the Court, in the case of *Cyrus Chipman*, (14 *Johns. Rep.* 217.) have said, that an attachment might issue against the property of an absent or absconding partner; but the case of *Crispe* v. *Perrit*, (*Willes*, 471.) to which the Court was referred, and on which their decision seems to be founded, is not analogous. In *M'Comb* v. *Dunch*, (2 *Dallas*, 73.)

the *Philadelphia* Court of C. P. held, that partnership property could not be attached to answer the separate debt of one of the partners.

There can be no doubt, that this is a proper motion. A third person, whose goods have been taken by a sheriff, under an execution, may apply to the Court, by motion, to have the goods restored to him. (*Tidd's Pr.* 935.) It is for the protection and advantage of the sheriff, as it is more summary and less expensive than an action against him.

*Wells* and *J. Lynch*, contra. There is a suit pending in the Court of Chancery, where all the questions relative to this property will be properly decided. The applicants here do not state, in their notice, to whom the property is to be restored. There was a claim to the property put in by a person of the name of *Van Santfort*, before the sheriff, and the jury decided against him. Besides, the property is already under *execution*, and S. & S. have no right to demand its restoration.

In *Mersereau* v. *Norton*, (15 *Johns. Rep.* 179.) the Court decided, that the property of an absconding debtor, which he has, as a tenant in common of a chattel, with another, might be seized and sold by the sheriff, under an attachment; but although the sheriff seizes the whole, he can sell only an undivided moiety, and the vendee becomes a tenant in common with the other co-tenant, or part owner. There seems to be no reason for any distinction between *partners*, and tenants in common of a chattel. In the case of a partnership, there is a survivorship, for the special purpose of settling the partnership concerns; but the surviving partner is merely a trustee, as to the moiety of a deceased partner. In *Moody* v. *Payne*, (2 *Johns. Ch. Rep.* 548.) the Chancellor takes it to be settled law, that the interest of one partner in the copartnership property, may be taken and sold under an execution, on a judgment against such partner, for his separate debt; and he dissolved the injunction which had been issued in that case, to stay the sale by the sheriff, who had seized the partnership property. If the partnership property may be seized, and sold on an *execution*, why may it not, also, be seized under an attachment, which is a

kind of anticipated execution against a debtor who has withdrawn himself from the reach of the ordinary process of law? In *Mersereau* v. *Norton*, this Court considered an attachment in the same light as an execution.

ALBANY,
January, 1819.

Matter of
SMITH.

*T. A. Emmet*, in reply. Proceedings against a bankrupt, as in *Crispe* v. *Perrit*, are on the ground of criminality; and there may be some supposed analogy, as to *criminality*, between a bankrupt and an *absconding* debtor. But the statute makes no distinction between an *absent* and an absconding debtor. Both are placed on the same footing. They are not, therefore, to be regarded as criminal. Again; bankruptcy dissolves the partnership; but can the tempory absence of one partner, or his absconding to avoid legal process in a particular case, have that effect? How, then, does the case of a bankrupt apply? The consequences of applying the statute to the case of partners, may, as has been suggested, be of the most serious nature. Some of the most opulent commercial houses here, have partners resident abroad.

If the Chancellor, in *Moody* v. *Payne*, and the judges in every other case, have felt and expressed the very great inconvenience and embarrassment arising from the seizing of partnership property by execution, for the separate debt of one partner, why increase the inconvenience by suffering partnership property to be attached under this act? An execution does not, necessarily, put a stop to the partnership business; but an attachment, under which all the property, real and personal, of a partnership, with their books of account, papers, &c. is seized, must have that effect. If the act had contemplated the attachment of partnership property, surely there would have been some expressions to show such an intention; and the act would have provided, that the partnership debts should be first paid out of the property. The provisions of the act are, that the property, or its proceeds, is to be divided, rateably, among all the creditors, without distinction or preference. If we look at the different sections of the act, (sec. 3. 5. 10. 20, 21.) it is apparent that partnership property was never intended to be attached.

This proceeding is not in the nature of an *anticipated* execution; it is rather a *sequestration*. The law, in regard to executions against partnership property, is inconvenient and hard enough; but the doctrine now contended for, goes to the destruction of the partnership. It is more extensive, and more injurious, in its effects than bankruptcy. It goes farther than the bankrupt law of any commercial country in the world.

*Per Curiam.* Where an *execution* is issued for the separate debt of one partner, it has been the constant practice to take the share which such partner has in the partnership property; (a) but it has been settled, at least, since the case of *Fox* v. *Hanbury*, (*Cowp.* 445.) that the sheriff can sell only the actual interest which such partner has in the partnership property after the accounts are settled, or subject to the partnership debts. The separate creditor takes it in the same manner, as the debtor himself had it, and subject to the rights of the other partner. (b) The sheriff, therefore, does not seize the partnership effects themselves, for the other partner has a right to retain them, for the payment of the partnership debts. (*Moody* v. *Payne*, 2 *Johns. Ch. Rep.* 548.) (c)

(a) Vide *Backhurst* v. *Clinkard*, (1 *Show.* 169.) *Heydon* v. *Heydon*, (1 *Salk.* 392.) *Anon.* 1 *Comyn's Rep.* 277. *Holt*, 302. 643. *Pope* v. *Harman*, (*Comb.* 217.) *Tissard* v. *Warcup*, (2 *Mod.* 279, 280. 12 *Mod.* 446.) *Jacky* v. *Butler*, (*Ld. Raym.* 871.)

(b) Vide, also, *Eddie* v. *Davidson*, (*Doug.* 650, 651.) *Smith* v. *Stokes*, (1 *East.* 367.) *Wilson* v. *Gibbs & Conine*, (2 *Johns. Rep.* 282.) *Taylor* v. *Fields*, (4 *Vesey*, 396.) *Chapman* v. *Koops*, (3 *Bos. & Pull.* 289.) *Parker* v. *Pistor*, (3 *Bos. & Pull.* 288.)

(c) There appears to have been some difficulty as to the manner in which the separate creditor of one partner was to take his execution against the share of such partner, in the joint property of the firm; and the Courts of law and equity seem not to have clearly understood each other on the subject. According to the old cases, at law, the separate creditor took the whole of the joint property, and sold an undivided moiety of it, and applied the funds to the payment of his debt, without giving himself any concern about the rights of the other partner, or previously ascertaining what was the interest or share of each. Since the case of *Fox* v. *Hanbury*, the Courts of law have professed to follow the principles of the Courts of equity. (*Croft* v. *Pyke*, 3 *P. Wms.* 182. *Ex parte Ruff*, 6 *Ves.* 126, 127. *Ex parte Williams*, 11 *Ves.* 5. *West* v. *Skip*, 1 *Ves. sen.* 239. 242.) In *Taylor* v. *Fields*, (4 *Ves.* 369.)

We have considered an attachment under the act for re-

lief against absent and absconding debtors, as analogous to

the facts of which case are more fully stated in a *note* to *Young* v. *Keighly*, (15 *Ves.* 559, 560.) Ch. Baron *M'Donald*, in delivering the opinion of the Court, says, that an assignee, or executor, or separate creditor, "coming in the right of one partner against the joint property, comes into nothing more than an *interest* in the partnership, which cannot be tangible, cannot be available, or be delivered, but under an account between the partnership and the partner ; and it is an *item* in the account, that enough must be left for the partnership debts." In *Eddie* v. *Davidson*, the Court of K. B. directed that it should be referred to a Master to take an account of the share of the partnership effects to which the other partner was entitled, and that the sheriff (who had sold the whole partnership effects under an execution against one of the partners) should pay over to his assignees, part of the money, equal to the amount of his share. But the Court of C. B. (3 *Bos. & Pull.* 288, 289.) refused to direct a reference to their *prothonotary*, to ascertain what was the *interest* of the separate partner, in the partnership effects, the whole of which had been seized by the sheriff, or to stay the execution, until an account could be taken of the several claims on the property. They said, that all the difficulties were to be encountered in equity ; that the safest line of conduct for the sheriff to pursue, was to put some person into possession of the defendant's share, as vendee, leaving him and the parties interested to contest the matter in equity, where a bill might be filed. They did not consider, that they had any authority or jurisdiction to order an account to be taken. In *Dutton* v. *Morrison*, (17 *Vesey*, 193—205.) Lord *Eldon* understands the rule to be, "that upon an execution against one partner, or the *quasi* execution in bankruptcy, no more of the property which the individual has, should be carried into the partnership, than that *quantum* of interest, which he could extract out of the concerns of the partnership, after all the accounts of the partnership were taken, and the effects of that partnership were reduced to a dry mass of property, upon which no person, except the parties themselves, has any claim." In *Watson* v. *Taylor*, (2 *Ves. & Beame*, 299, 300.) Lord *Eldon*, in the course of the argument, inquired, "how the sheriff executes the writ under a judgment against one partner, according to the present doctrine of the Courts of law, that he takes the *interest* of the partner. Is not that a dissolution of the partnership ?" Mr. *Cooke*, as *amicus curiæ*, said, "the way in which the sheriff executes the writ in practice, is by making a bill of sale of the actual interest." Lord *Eldon* observed, "if the Courts of law have followed Courts of equity, in giving execution against partnership effects, I desire to have it understood, that they do not appear to me to adhere to the principle, when they suppose that the interest can be sold, before it is ascertained what is the subject of sale and purchase." *King* v. *Sanderson*. (1 *Wightw.* 50.) In *The*

ALBANY,
January, 1819.

Matter of
'SMITH.

an execution; (a) and in the matter of *Chipman*, (14 *Johns. Rep.* 217.) we decided that it might issue, where one of seve-

*King* v. *Rock*, (2 *Price's Excheq. Rep.* 198.) where partnership property was seized under an *extent* for a debt due to the Crown from one of the firm, the Court refused to grant an *amoveas manus*, in the first instance, but directed a reference to the *Deputy Remembrancer*, to report an account of the joint and separate property, and to ascertain the clear surplus and proportion of each party; and, afterwards, security being giving to answer the Crown's debt, so far as it should appear, on the account, that the Crown was entitled, they ordered an *amoveas manus* to be issued. In *Moody* v. *Payne*, (2 *Johns. Ch. Rep.* 548.) the Chancellor refused to grant an injunction, on a bill filed for that purpose, to stay the execution at law until an account was taken. He thought, that as the sheriff could sell only the interest of the one partner, subject to the rights of the partnership creditors, there would be no harm in suffering the separate creditor to go on at law; as, if any sacrifice of the interest of the separate partner should be made, by reason of the *uncertainty* of that interest, it could affect only that partner or the separate creditor, who did not raise the objection. And he thought Mr. *Maddock* (1 *Madd. Ch. Rep.* 112.) was not warranted in his conclusion, that chancery would, on a bill filed by the other partners, stay the execution, until an account was taken of what was due to such separate partner. If the Court of law, then, cannot order an account to be taken between partners, and will not stay the execution to give the solvent partner time to have the account taken in equity, it follows, that the sheriff can sell only the right, title, and interest, of the partner against whom the execution issues, whatever it may happen to be, when the affairs of the partnership are wound up, and the account finally taken and settled. In *Barker* v. *Goodair*, (11 *Vesey*, 78. 85.) where partnership goods had been taken, on a *foreign attachment*, and the *assignees* under a commission of bankruptcy against one of the partners, and the *garnishee*, filed a bill to restrain the proceeding on the attachment, Lord *Eldon* held, that the proceeding was to be restrained, to give an opportunity to have the question decided by the Court, as to the application of the property among the different claimants. In *Taylor* v. *Fields*, (15 *Vesey*, 559. *note.* S. C. 4 *Vesey*, 469.) the sheriff seized all partnership effects, under an execution against one of the partners, and on being indemnified by the joint creditors, gave up the partnership effects, and the creditor, of the separate partner, brought an action against the sheriff for a false return. The partners having become bankrupts soon after the judgment, a bill was filed by the assignees to be quieted in the possession of the partnership effects, and for an account, and to restain, by injunction, the suit against the sheriff. The Court ordered the assignee to pay into court 640 pounds, without prejudice, and in default thereof, the defendant to be at liberty to proceed in his action; and it appearing, on an account taken of the interest of

ral partners had absconded, for a partnership debt. But the sheriff can take the separate property only, of the absconding debtor. He cannot seize the partnership effects, for the other partner has a right to retain and dispose of them, for the payment of the partnership debts. The right of the *trustees* appointed under this act, will attach on the *interest* only of the absconding debtor in those effects, or to his proportion of the surplus remaining, after payment of all the debts of the partnership. The case of partners, is different from that of tenants in common of a chattel. (b)

We shall, therefore, order the goods, books, &c. to be restored, but without costs to either party.

The following rule was entered: " *Ordered,* that the sheriff of the county of *Ontario* do restore to *William Soulden,* or to such person as he shall appoint to receive the same, the goods, books, and moneys, taken by the said sheriff, under the first mentioned attachment, and the other goods or property of the said *Soulden & Smith,* as partners, which he may have so taken : *And* that the sheriff of the county of *Oneida* do, also, restore to the said *William Soulden,* or to such person as he shall appoint to receive them, the books of account, and papers, taken by the said sheriff, as aforesaid, under the second attachment ; and that, as to the goods taken on the said execution, and claimed, also, by the said sheriff, by virtue of the said attachment, that he do henceforth surcease all proceedings, or claim to the said goods, under or by virtue of the said warrant of attachment."

the separate partner, that there was no balance due to him, after payment of the partnership debts, the injunction, which had been issued in the mean time, was made perpetual.

(a) In *Morley* v. *Strombom and others,* (3 *Bos. & Pull.* 254.) it was held, that where three partners, two of whom resided abroad, were sued for a partnership debt, and the resident partner appeared by himself, but refused to appear for his copartners, the sheriff, on a *distringas* against the non-resident partners, to compel their appearance, might take the partnership effects, in the possession of the resident partner, though purchased and paid for by him alone; and the Court refused to relieve him, saying, that what might be taken under an execution, might be taken under a distress.

(b) Vide *Merscrean* v. *Norton,* (15 *Johns. Rep.* 179.)