COLLINS (HOLDEN v.). See Case No. 6,-599.

## Case No. 3,015.

### COLLINS et al. v. HOOD.

[4 McLean, 186.] [1]

Circuit Court, D. Ohio. July Term, 1846.

TRANSFER OF ASSETS OF INSOLVENT FIRM TO INDIVIDUAL MEMBER—DISTRIBUTION OF PARTNERSHIP ASSETS IN BANKRUPTCY.

1. Equity will not sustain an agreement between partners, if the firm be at the time insolvent, by which the whole property and effects of the firm, are transferred to one member; the effect being to, defeat the equitable preference of the firm creditors, and to give the separate creditors of the partner accepting such transfer, a preference to the creditors of the company.

[Cited in Re May, Case No. 9,328; Johnston v. Straus, 26 Fed. 63.]

2. The provisions of the fourteenth section of the late bankrupt law [5 Stat. 448] directing the mode of settlement and distribution of estates in bankruptcy, in cases of partnerships, are in affirmance of the principles on which courts of equity proceed in the adjustment of the rights of a creditor of a firm, and the separate creditor of each partner.

[Cited in Mead v. National Bank of Fayetteville, Case No. 9,366; Re Johnson, Id. 7,369.]

3. The creditors of a firm are entitled to the preference of having their debts paid out of the partnership funds, before the private creditors of any of the partners.

4. The sale and transfer of the partnership, property and effects to one partner in the case before the court, is condemned by the second section of the late bankrupt law, as made in contemplation of bankruptcy, and with a view to a preference of the separate creditors of the individual members of the firm, to the prejudice of the creditors of the firm.

In equity.

Mr. Hunter, for plaintiffs.

Mr. ——, for defendant.

LEAVITT, District Judge. This is a controversy between the complainants, as creditors of the late firm of Wing & Lamb, and the creditors of the individual members of that firm. The bill charges, that a certain agreement, executed by the members of said firm, the 22d of April, 1842, providing for the dissolution of the firm, and by which, all the partnership property and effects were transferred to Wing, as a purchaser, is fraudulent and void as to the creditors of the firm. The prayer of the bill is, that said agreement may be annulled, and the rights of the different classes of creditors settled, as if no such agreement had been made.

The facts which it will be material to notice, as bearing on the points presented for the decision of the court, are briefly as follows: William Wing and William Lamb, for some years prior to the said 22d of April, 1842, had been associated in business as mercantile co-partners, and at that time, the firm being greatly embarrassed, if not actually insolvent, they entered into the agreement, before noticed. By this agreement,

[1] [Reported by Hon. William McLean, Circuit Justice.]

in consideration of all the partnership property and effects transferred to him, Wing agreed to pay his partner the amount of capital invested by him in the concern, being $6,905 13; and also, the sum of $2,200, for his share of the profits; and, moreover, to pay all the firm debts, and to indemnify Lamb, on account of his liability for such debts. In the month of December next after this agreement of dissolution, Wing filed his petition in bankruptcy; and some weeks after, Lamb filed a petition for the same purpose. By the decree of the proper court, they were severally discharged under the late bankrupt law; and Thomas Hood, who is made a defendant in the bill, was appointed assignee for each. The assignee has taken charge of their property and effects, and has collected and paid into court about $4,000, leaving a large amount yet to be collected and paid over.

It is insisted by the complainants, that the agreement between these partners is fraudulent and void, and could not operate as a valid transfer of the property and effects of the firm to Wing. And the court is asked to decree accordingly, and that the rights of the different classes of creditors may be settled, as if no such agreement had been made. There can be no doubt as to the principle on which the rights of the creditors of the firm, and the creditors of the individual partners would have been settled, if the partnership had continued till dissolved by the applications of its members for relief under the bankrupt law, then in force. The 14th section of that law would have controlled the distribution of the proceeds of the property and effects of the firm, and that of the individual members of the firm. This section authorizes the creditors of the firm, and the separate creditors of each partner, to prove their debts, and directs the assignee to keep separate accounts of the joint stock or property of the company, and of the separate estate of each member thereof. And it provides, that "after deducting out of the whole amount received by such assignees, the whole of the expenses and disbursements paid by them, the nett proceeds of the joint stock shall be appropriated to pay the creditors of the company, and the nett proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors." It is further declared, that if there is any surplus, after satisfying one or the other class of creditors, that surplus shall be applied to the satisfaction of the class in regard to which there is a difficulty. These provisions of the fourteenth section of the bankrupt act [5 Stat. 448] are in affirmance of the principles on which courts of equity have uniformly proceeded, in the adjustment of the conflicting rights of the creditors of a firm, and the separate creditors of each partner. That the creditors of a firm are entitled to the preference of having their debts paid out of the partnership funds, before the private creditors of either of the partners, is a doctrine well settled by courts of chancery. 1 Story, Eq. Jur. § 675. And any transfer or sale of the property and effects of a firm, which defeats and destroys the preference, can not be sustained in equity. That such is the effect of the agreement between Wing and Lamb, admits of no doubt. It transfers the entire property to Wing; making him the owner in his individual right, and thus prejudicing the rights of the creditors of the firm. It withdraws from them, and places beyond their reach, the property and means to which they have a just right to look for payment; and, if operative, causes such property and means to enure to the benefit of those who have no claim, in equity, beyond the surplus, if any, after the payment of the partnership debts. That the firm of Wing & Lamb, if not insolvent at the time of the execution of this agreement, was in a condition of great embarrassment, seems not to admit of a doubt. It is true, the master, in his report, arrives at the conclusion that Wing had a surplus of assets, beyond his debts, of about $10,000. But in this estimate, as the court understand it, no deduction is made from the value of the stock in trade transferred to Wing, for the amount of nearly $7,000, which he had agreed to pay the retiring partner for his interest in the stock, and the sum of $2,200 to be paid to him for his share of the profits of the concern. These sums deducted, there would still be a nominal surplus of upward of $1,000; but when it is considered that of the entire assets of the firm, including the individual property of Wing, the sum of about $16,000 is made up of outstanding claims due the firm, and necessarily subject to large deductions for uncollectible debts, the solvency of the partner Wing, and his ability to meet the claims against the firm, are more than questionable. In addition to this, it may be noticed, as a further evidence of the embarrassment of the partner Wing, that he was liable, as a member of the previously existing firm of Wing, Ruffner & Co., for a debt of about $11,000, which is not taken into the account by the master, but must be regarded as affecting the pecuniary standing of the firm at the time of the agreement of dissolution. The witness Black, who has been examined touching the affairs of the firm, and who had been a clerk in the employ of Wing & Lamb for two years previous to the dissolution, expresses the opinion that the firm would have been able to pay its liabilities, if time had been allowed them for that purpose. This is equivalent to an admission of the serious embarrassment of the company, and in one aspect, of its insolvency. This witness states, that during its existence, eastern debts at maturity, and when payment was urged, were not paid; and that it is within his knowledge that some of these debts have never been satisfied.

It may be noticed, as a fact warranting the

inference of the insolvency of this firm, if not of a design fraudulently to defeat the just rights of creditors, that a few days after the date of the agreement referred to, Wing sold and transferred to Black, who appears to have been without means, the entire stock in trade; and the business was for some time carried on in the name of Black, but as appears from his own admission, really for the benefit of Wing. This arrangement continued till within a few days prior to Wing's application in bankruptcy, when Black surrendered and transferred the property and effects to Wing. There is no explanation of this transaction, redeeming it from the suspicion which the facts so fully warrant. It seems to admit of no other construction, than that Wing, under the pressure of his embarrassments, made the pretended transfer to Black, with a view to defeat his creditors in their efforts to enforce the collection of their debts. The property thus transferred by Black to Wing, on the eve of his application in bankruptcy, was entered on his schedule of property and effects, as owned by him.

These considerations, in connection with the fact that in the autumn following the date of the agreement of dissolution, both Wing and Lamb filed applications in bankruptcy, and thus made the most solemn admission of hopeless insolvency, leave little doubt in the mind of the court, that at the date of the agreement, they were involved in difficulties from which they could have no hope of extrication.

Although, on the well settled principles of equity, for reasons already stated, the sale and transfer to Wing can not be sustained, it may not be improper to notice that it is clearly condemned by the second section of the bankrupt law; and that the present controversy between these parties is so far connected with a proceeding under that law, as to bring the transaction in question within its scope and operation, there is no room to doubt. By the second section of the act, all payments, transfers, etc., made when the party was in a state of insolvency, and which, in their operation, give a preference to particular creditors, fall within its prohibition; and, by a well settled construction, are regarded as made in contemplation of bankruptcy, and as possessing no validity. The transfer of the property and effects of the firm to Wing, under the agreement of the 22d of April, 1842, is clearly within the letter and the spirit of this section. It was made in contemplation of bankruptcy, and in its effect, gave a fraudulent preference to the separate creditors of the individual members of the firm, over the creditors of the firm, thus benefiting the one class, to the prejudice of the other. Such being the views of the court, they decree the cancelment of the articles of dissolution, and direct that the distribution of the proceeds of the partnership property and effects be made as if no such dissolution had taken place. And if, in carrying out the principles of this decree, a further reference to a master is necessary, that object may be embraced in the decree drawn by counsel.