GEORGE LINFORD *vs.* GEORGE LINFORD, JUN., AND ABRAM LENT.

1. Partnership execution creditors have the legal right to be first paid out of the proceeds arising from the sale of partnership property, before the same, or any portion thereof, can go to the individuals of the firm, or be appropriated to the payment of individual debts.

2. Such creditors may, however, waive their legal right of preference by express agreement, and admit individual creditors to take equally or ratably with themselves, if such arrangement be expressly or tacitly assented to by all the members of the firm.

3. In making an order for the payment of money paid into court by the sheriff, in pursuance of an agreement entered into by execution creditors. it is sufficient for the court, if practicable, to follow the wording of the agreement, instead of determining by calculation the specific amount to be paid to each execution creditor.

This was a *certiorari* to the Common Pleas of Union county, to bring up the order for the payment of money raised by sheriff's sale.

Argued before Justices OGDEN, WHELPLEY, and CLAWSON.

*Ransom*, for plaintiff in *certiorari*.

The opinion of the court was delivered by

CLAWSON, J. Abram Lent and George Linford, jun., were partners in the livery business. George Linford advanced to them, as partners, the sum of four thousand eight hundred and eighty-nine dollars, with which they purchased stock and carried on their business, and for which he took their joint and several bond, bearing date October 28th, 1857, to be entered up in case of emergency, or whenever said Linford might think proper so to do. Abram Lent advanced, for the benefit of the firm, sixteen hundred and twenty-six dollars, for which he took the separate bond of his partner, George Linford, jun., bearing date the same twenty-eighth day of October, 1857.

K*

On the same day, October 28th, 1857, George Linford and Abram Lent entered into an agreement under seal, whereby they covenant, promise, and agree with each other as follows, viz.

"That the judgments to be entered on said bonds and warrants shall be of equal priority;" . . . . "that neither the said Lent nor the said Linford shall enter up their said judgments on the said bonds and warrants without giving reasonable notice to the other of his intention to do the same; and if the execution issued upon either of the said judgments shall obtain legal priority of that issued upon the other, then and in that case the money raised by the sale under such execution shall be paid to the said Lent and to the said Linford ratably, according to the respective amounts of their said judgments; and at all times when sale shall be made under either of said judgments, the amounts raised thereby shall be paid to the said Lent and the said Linford ratably, according to the respective amounts of their said judgments."

Judgments were entered on both bonds, and both executions were delivered to the sheriff on the same day, to wit, on August 11th, 1858; but it is admitted that the execution of Lent v. Linford, jun., was delivered to the sheriff first in order of time, and both levied upon at the same time. The partnership property, consisting of several horses, carriages, &c., was sold, on these two executions, on August 18th, 1858;—no individual property was sold. In pursuance of notice by Lent, the sheriff paid the money into the court of Common Pleas, and they, on September 30th, 1858, made their order, that the money paid into court be paid to the plaintiffs in execution ratably, in proportion to the amounts of their respective executions, in pursuance of the above mentioned agreement.

The propriety and legality of this order is now objected to on three grounds.

1. Notwithstanding the agreement, inasmuch as the

money arose from a sale of the partnership property, the Linford execution is entitled to be first paid, because it was for a partnership debt.

2. Because the Common Pleas of Union erred in holding that the agreement was intended to apply to the partnership property.

3. Because, if their construction of the agreement be right, the order is defective and illegal in not determining the specific amount to be paid to each execution creditor.

As to the position, that partnership property must first pay the partnership execution creditors, there can be no doubt at this day. This principle of law has been repeatedly recognised in England, and in most, if not all of the American states, and has its foundation in correct reason and sound judgment. No other rule could be adopted which would satisfy the mercantile world, or enable trade, or business transactions of any kind, to be conducted extensively upon any sure or certain basis. That confidence which is always inspired by the possession of property, and the credit given to the owner in consequence thereof, would be otherwise totally destroyed. The business community, without it, would necessarily be reduced to the adoption of the cash system alone, or at least be very much circumscribed and limited in its operations. Much of the learning, discovery, and invention of modern times is attributable to this well settled principle. Commerce, agriculture, manufactures, science, and art are all incalculably indebted to the publication of this sound and rational principle. The individual mind may think, calculate, and invent, but it requires a union of energy and capital to accomplish any of the great improvements in which the present century has been, and continues to be, so abundantly fertile. But we need not argue this point, or occupy much time or space in the disposal of it. Reason and authority both fully settle it. Counsel is fully sustained by the authorities referred to by him—1 *Vesey* 239 ; 4 *Ves.* 96, 303, 369 ; 15 *Ves.* 559 ; 1 *Penn. St. R.* 198 ;

20 *Penn.* 228 ; 16 *Johns.* 102 ; 1 *Story's Equity* 626, and to which he might have added many more directly in point ; 6 *Mass.* 271 ; 11 *Mass.* 242, 469 ; 17 *Mass.* 206 ; 3 *Harr.* (*Del. Rep.*) 80 ; 3 *Kent's Com.* 24 ; *Watson on Part.* 386 ; *Story on Cont.* § 359 ; *Gow on Part.* 258 ; *Levi's Merc. Law* 11 (*L. Lib.*) 152.

But he need not have gone so far for authorities. He seems to have ignored our own books. By the adjudications of our own courts, the same principle has been enunciated and clearly settled. In *Curtis* v. *Hollingshead* 2 *Green* 409, it is plainly intimated. In *Scull and Thompson* v. *Alter*, 1 *Harr.* 150, Chief Justice Hornblower, in delivering the opinion of the court, asserts the doctrine as a well settled rule of law, and says, *in hœc verba,* partnership effects must be applied, in the first instance, to the partnership debts, and the separate effects of the individual partners to the payment of their individual debts respectively. In *Brown et al.* v. *Bissett*, 1 *Zab.* 46, the reasoning of Chief Justice Hornblower in the case of *Curtis* v. *Hollingshead*, above referred to, is quoted and approved.

In the case of *Baldwin* v. *Johnson et al.*, *Sax. Ch. Rep.* on *p.* 453, this same doctrine is repeated. Chancellor Pennington, in *Cammack* v. *Johnson et al.*, 1 *Green's Ch. Rep.* on *p.* 167, says, " the rule is well settled, that in equity the creditors of a partnership have a right to be paid first out of partnership property, in preference to those of the individual partners. The complainant, also, had a clear interest in insisting that the property of the firm should not go to discharge the debts of his copartners until all the demands against the firm were satisfied. After the debts of the firm are satisfied, the *residue* of the property belongs to the individual partners, and can then, and then only, be applied to the payment of their individual creditors." He then goes on and argues the case of dormant or silent partners, and says the rule applicable to such cases may be somewhat different, but repeats the law, as above, with respect to overt and known partners, and refers to

*Moody* v. *A. and H. Payne*, 2 *Johns. Ch. Rep.* 548, which is a strong case, fully sustaining his own position.

The above authorities, and many others which might ▌e referred to, if necessary, fully and clearly settle the law, leaving no room to doubt that partnership debts are to be first paid out of partnership property, and the surplus, if any, belongs to the individual partners, and may be appropriated to the payment of individual debts; so that if the question in this case were to be determined by legal principles alone, George Linford would be entitled to receive the whole of the money paid into court by the sheriff, because it all arose from a sale of partnership property.

Linford, however, prefers to barter away his legal rights, for reasons to be conjectured only by us, but for a consideration deemed sufficient by himself, and determines his rights by agreement, rather than leave them to be determined by law—and this he certainly has a perfect right to do. The law, as we have said, would have given him all the effects of the firm, but by his agreement he lets another in to share with him his legal right of preference. The propriety of his so doing is not for us to determine, and his right to do so, under the circumstances of the case, we claim no right to question. How far the court might have been compelled to interfere with the legal operation of that agreement, in protecting the rights of George Linford, jun., upon his own interposition, claiming that he shall be first absolved from the liabilities of the firm, by the appropriation of the effects of the firm, strictly, according to the rule of law, he not being a party to the agreement, is not necessary now for us to decide. Every man has the privilege of disposing of his legal rights, as well as his personal effects, in accordance with his own wishes. But it is contended that the intention of the agreement referred to was not to give up any rights which Linford already had by law as respects the partnership property, but to put him on an equality with

Lent with respect to the separate property of Linford, jun. Yet it does not appear, by the return of the sheriff or anywhere by any of the papers in the cause, that either partner had any separate property, thus exploding the idea of gaining anything by obtaining a lien upon the separate personalty of defendants or either of them. More than that, this matter need not have been left to mere conjecture, if such was the intention of the parties to the agreement. It would have been just as easy to have expressed that intention as to have expressed what they have, if they meant it.

The agreement says nothing about individual or partnership property, but simply and plainly asserts that the "judgments to be obtained on said bonds shall be of equal priority," without regard to the time of their entry; that "neither shall enter judgment upon his bond without reasonable notice to the other," and "if either shall obtain legal priority by the entry of judgment and issuing execution" it shall not avail him, because of the further stipulation, that in that case "the money raised by a sale under such execution" (without reference to any particular kind of property) "shall be paid to the said Lent and to the said Linford ratably, according to the respective amounts of their said judgments." And further, the agreement concludes in general terms, that "at all times when sale shall be made under either of the said judgments, the amount raised thereby shall be paid to the said Lent and said Linford ratably, according to the respective amounts of their said judgment." Not one word is used about any particular kind of property, from beginning to end, separate or individual, partnership, real, or personal. The conclusion therefore is irresistible, that a ratable division of the proceeds must have been intended, coming from whatever source they may. It is impossible to regard at all the meaning of the words made use of, and give it any other construction. There is no ambiguity in the instrument itself authorizing the interpolation of a

word or sentence to give it meaning, or admitting of any extrinsic explanation. We have no right to strain or warp the phraseology of the agreement in such a way as to give either party to it any advantage over the other, or any benefit clearly not intended thereby. It may be that the sole object of the agreement was to place Lent on an equal footing with Linford, as against the property of the firm, both parties well knowing that Linford, jun., had no separate property upon which he might levy, if it should become necessary to enter up his bond, especially as it appears that the money advanced or paid by Lent, and for which Linford, jun., gave him his bond, was for the benefit of the firm, and to enable the firm to continue their business. Whatever circumstances or difficulties may afterwards have occurred to prevent Lent from enjoying the benefits resulting to him from his agreement, can have nothing to do with the construction of it at this time and in this proceeding in a court of law. If creditors, in consequence of subsequent insolvency, as is intimated, or for any other cause, are ready to step in and deprive him at once of any and all benefits he may reap from the order of the Common Pleas, this does not and cannot alter the meaning or construction of the instrument, or affect in any way the character of the order to be made in pursuance thereof. How far a court of equity might go, in the exercise of its peculiar powers, in giving relief under such circumstances to aggrieved or interested parties, is not for us here to determine or inquire, and I forbear the expression of any opinion upon that subject.

As to the third objection made by counsel, we think the order of the Common Pleas of the county of Union altogether legal and sufficient, although it does not determine the amount specifically to be paid to each execution creditor. In cases of money paid into court by the sheriff when there are several executions, each claiming the right to priority of payment, the universal practice is for the court to settle merely the order in which they are en-

titled to be paid, without ascertaining the amount to be paid on each. I see no reason why they should be required to engage in any calculation of the precise amount due. The order settling the priority is perfectly intelligible, and leaves nothing for the sheriff to do but make the simple calculation of debt, interest, and costs due upon each, and pay over the money upon the executions in the order directed by the court. I know of no precedent for the case before us; but it is so analogous to that above referred to, that, we think, to require any greater particularity, or to adopt any more stringent rule in regard to it, would be unreasonable and unnecessary. In this case there are but two executions. The court is asked to settle the right of priority between these, if any exist, and say how the money shall be paid. They say, in law, Linford would be entitled to be first paid, but in consequence of his agreement with Lent, the money must be paid upon the two executions ratably, in proportion to their amounts respectively, in accordance with the terms of that agreement, and an order to that effect, almost in the very words of the agreement, is made accordingly. This, we think, renders the matter perfectly intelligible, and nothing remains to be done but to make the calculation, and ascertain the amount due and to be paid upon each execution, in pursuance of the order. We think the order of the Common Pleas sufficiently full and explicit in its terms, and in accordance with the true intent and meaning of the agreement between the parties.

Let the order, therefore, be confirmed in all things.