G. G. Barnard, J.
The affidavit on which the attachment was issued states, in substance, that the action is brought against the defendants for the wrongful conversion of personal property of the plaintiff, and the complaint, which is made a part of the affidavit, alleges, that in consequence of the wrongful sales, detentions and conversions therein mentioned, the plaintiff has sustained damage in the sum of one hundred and twenty-five thousand dollars, and judgment for that amount is demanded, and interest from the first day of October, 1889. The plaintiff and defendant are residents of the city of Baltimore. The affidavit also states that the defendants have property within this State—to wit: stocks, bonds and gold, in the hands of Yan Schaick & Co., Hallgarten & Co., and others, and accounts with said firms, margins on deposits with those houses, and balances which will result in favor of said defendants, on a settlement of accounts with said firms. On these papers a warrant of attachment issued to the sheriff of this county, under which he claims to have attached certain balances alleged to be due the defendants from Yan Schaick & Co. and Hallgarten & Co., brokers, doing business in this city, and certain stocks, bonds and gold. It appears from the affidavits of Mr. Jenkins Yan Schaick and of Charles S. Hallgarten, that all moneys and property in their hands received from the firm of William Fisher & Sons, of Baltimore, have' *374 "been received since January 1, 1870, as margins for and on account of contracts made since that time, on account of individuals and corporations in Baltimore, customers of the Baltimore firm, and whose names were disclosed to the Hew York "brokers "before named, at the time of, or prior to the receipt of them, and prior to the issuing of the attachment. That the money and property so received belong to the defendants and W. Williams Remington, who have constituted the firm of William Fisher & Sons since January 1, 1870, and that the securities in the hands of said Hew York brokers are subject to fluctuation in price and value, and that the business between them and the Baltimore firm is that of a general banking and brokerage business, and that the interests of the Hew York firms are injuriously affected by the attachment, as well as the interests of Remington and others. Mr. Remington’s affidavit shows that he became a member of the firm, January 1, 1870, and that since that period the firm has been composed of tlie defendants and himself, and that since that date, on account of their numerous customers in Baltimore, they have caused stocks, bonds and gold to be bought and sold in Hew York, through the brokers before mentioned, and that margins and moneys derived from and furnished by the customers and dealers with said-firm in Baltimore from time to time, since said January 1, 1870, have been forwarded and remitted to the Hew York brokers to serve as .moneys and margins in their hands,- on account of the transactions entered into by the Hew York brokers for the account of the Baltimore firm, who were acting as brokers for their Baltimore customers, and he claims that all the money, funds, credits and property of said Baltimore firm standing to their credit, with, or held by the Hew York brokers, since January 1, 1870, are applicable to and should be applied in settlement of the affairs and liabilities of their firm as now constituted, and that his, as well as their customers’ rights are seriously injured by the attempt *375 to attach the funds "before mentioned. The plaintiff’s claim for damages arises out of the sale by the defendants of certain stock in September last. The defendants, Remington, the Baltimore principals, and the New York brokers, on these facts claim that the money and property in the hands of the New York brokers can not be attached by the plaintiff. The plaintiff and defendants reside in Baltimore, and the papers show that the plaintiff has commenced an action there to recover damages for the same conversion, which action is pending and undetermined.
The defendants suggest that an attachment ought not to issue in an action for the detention and conversion of property where the damages are uncertain, and must be assessed by a jury. The. allegation here is that the defendants refused to deliver the plaintiff’s property to him on demand, and that they have wrongfully detained, and have converted the same to their own use, and he claims damages as before mentioned, and the summons must, of course, be for relief, and cannot be for a sum certain. In Gordon v. Gaffey, 11 Abb. Pr., 1, Hogeboom, J., held that the Code did not authorize an attachment in actions for wrongs, and says that it refers to cases where a sum of money is specified in the summons, and does not embrace cases of trespass, trover, slander, libel, assault and battery, and kindred actions. This action is clearly what would have been called, before the enactment of the Code, an action of trover. The Code, as it then stood, authorized the issuing of the warrants of attachment, “in an action for the recovery of money.” Knox v. Mason, 3 Robt., 681, holds that air attachment could not issue in an action for the taking and conversion of personal property, and the judge says : “Yet the plaintiff in an action of tort must be at liberty to fix his own damages, and the court has no discretion in determining the amount. If the attachment is discharged on giving an undertaking, it must be for double the amount claimed *376 by the plaintiff’S'complaint. . . . Such a provision would be equivalent to one allowing a plaintiff to seize as much of the property of a foreign corporation or non-resident debtor as he thought proper in an action of tort.” The case in 11 Abb. Pr., 1, is approved. This court, at general term, in this district, in Shaffer v. Mason, 18 Id., 455; S.C., 43 Barb., 501, held that an attachment cannot issue as a provisional remedy, .under § 227 of the Code, in an action of trespass, for taking and carrying away personal property, the claim being for damages not ascertained, but to be assessed by a jury.
The defendants concede that the provisions of the Code have been changed since these decisions, so far as to warrant the issuing of the attachment in an action for the wrongful conversion of property, but not for the wrongful detention. They insist that where the property is detained simply, the plaintiff has a clear remedy by an action to recover the possession of the property alleged to be detained, which he cannot have where it has been converted. The Code authorizes, as before remarked, the issuing of the warrant for the wrongful conversion of propei ty, but in no other action of tort. It cannot issue in the case of assault and battery, and the like, and I think the amendment of 1866 must be regarded- as a legislative declaration that it shall not issue in any case of tort, except for the wrongful conversion of personal property. It certainly cannot issue in an action to recover damages for trespass to either real or personal property. Is an action to recover damages for the detention of personal property equivalent to one to recover damages for its conversion % Unless it is, this attachment has been improvidently issued, for, as has been frequently held in the cases cited, in actions of tort to recover damages which must be assessed by a jury, it cannot issue; and as I before stated, I think the legislature intended to authorize its issuing in tort, in the single case of a wrongful conversón of personal property; but I am of the opinion that a wrongful de *377 tention of property is itself a conversion (2 Greenl. Ev., § 642).
Van Schaick & Co. and. Hallgarten & Co. insist that they are seriously injured by the operation of the attachment ; that they hold certain margins on certain stocks and gold, which they are carrying, by direction of William Fisher and Sons, for named customers and principals of theirs at Baltimore ; and that the prices and values of the securities thus held are daily fluctuating, and that their rights will be seriously impaired if the attachment stands. Upon the papers before me there can be no dispute about what the course of business between the Baltimore Arm and the New York-firms has b'een since January 1, 1870. Customers and dealers with the Baltimore firm employ the latter to purchase gold, stocks, bonds and other securities in this market, and furnish appropriate margins. These orders are executed by the Baltimore house, through the New York brokers before mentioned, and the margins and securities in the hands of the latter, in their accounts with William Fisher and Sons, and standing to their credit, belong to their Baltimore customers and dealers. Can these margins and these, securities in the hands of the New York brokers, under these circumstances, be attached, seized and held by the sheriff, to satisfy any judgment which may be recovered by the plaintiff against the Fishers, on account of transactions occurring in September, 1869, is one of the questions which was thoroughly discussed on the motion. . Remington claims his right, as partner, to the credits and balances sought to be attached, and insists that he has the right to collect, control and apply them in the ordinary course of the partnership, and that they are not liable to seizure upon an attachment in an action against his copartners. It must be borne in mind that the sheriff has not seized any securities belonging to the Baltimore firm ; he could only attach the interest of the Fishers in whatever balance may be due them in the transaction before *378 mentioned, on a final accounting; and it is well settled that only the surplus, after the payment of the copartnership debts and a statement of the accounts, can be seized (Lyndon v. Gorham, 1 Gall., 368, Story, J.).
I am at a loss to comprehend how, in an action commenced by attachment, which is a proceeding in rem, and where this court has no jurisdiction whatever over the persons of the copartners, such an accounting and statement can be had; and unless this can be done, the attempt to attach any supposed interest or surplus must be abortive.
‘1 From the nature of partnerships, one partner cannot have any separate right in any particular debt or article of property belonging to the partnership, liable to individual debt, but all the effects are a joint interest, and each partner can have a separate interest only in his share, upon the winding up and settlement of the partnership concern” (Church v. Knox, 2 Conn., 514, 518).
A work of great authority holds the rule absolutely, that partnership credits cannot be attached for the debt of one partner {Drake on Attach., 3 ed., §§ 567, 570).
And he maintains, with signal ability, and cites numerous authorities in support of the doctrine, that the attachment of a debt due to a partnership in an action against one of the partners, is justly distinguishable from the seizure, on attachment or execution, of tangible effects of the firm for the same purpose {Drake on Attach., § 567). The same doctrine is maintained in Winston v. Ewing, 1 Ala., 129; Johnson v. King, 6 Humph., 233; Lyndon v. Gorham, supra; Church v. King, supra; Atkins v. Prescott, 10 N. H., 120; Thomas v. Lusk, 13 La., 277; Smith v. McMerken, 3 Id., 319; Mobley v. Loubat, 7 Miss., 318; Kingsley v. Missouri Fire Ins. Co., 14 Mo., 467.
At section 570, Drake, upon this question, concludes thus: “The position taken in the decisions which have been referred to, is supported by the courts *379 of New Hampshire, Vermont, . Louisiana, Missouri, Tennessee, Indiana, Pennsylvania, Maryland and South Carolina. The contrary doctrine prevails in some States, but in the reported cases in these States we look in vain for any substantial foundation of reason or expediency upon which it can rest, or for any view-calculated to shake our confidence in the conclusion that partnership credits can in no case be talcen by garnishment to pay the individual debt of one member of a firm?’ (and see Barry v. Harris, 22 Md., 339.)
In this State the same doctrine was asserted in the Matter of Smith, 16 Johns., 102. This case was followed in Sears v. Gearn, 7 How. Pr., 303. Harris, J., in this case, in holding that a copartnership account book could not be seized under an attachment in an action against one of the partners, said: “The attachment will only operate upon the interest of the debtor against whom it issues, in the surplus which may remain after closing up the partnership accounts ; and an order must, therefore, be entered requiring the sheriff ' to restore to the defendant Houghton the account book seized by him.”
These are the only cases in this State upon the direct question of attaching partnership credits and balances, although, in 16 Johns., goods were also attached. It was not involved at all in Brewster v. Honigsburger, 2 Code Rep., 50, as shown by Justice Harris, in Sears v. Gearn, supra. Nor was the question involved directly in Abels v. Westervelt, 15 Abb. Pr., 230; but the reasoning in this case supports the rule as contended for by Drake, and laid down in the cases decided in this State. Nor is Goll v. Hinton, 8 Abb. Pr., 120, in conflict with the principle declared in the authorities already cited. There, a store of goods belonging to the» " copartnership was seized on an attachment in an action against the individual partner; and on motion to restore the goods to the non-absconding partner, it was, held that, inasmuch as the goods could have been seized! *380 on an execution against the individual partner, and his interest in them sold, they could be attached, and liis interest, after recovery of judgment, could, in like manner, be sold; and no one ever doubted, this doctrine. Deaxe lays down the same rule, and is one of the authorities cited, and is mainly relied upon by the court, in Holl y. Hinton. But who will contend, for a single moment, that an execution can be levied upon the balance and credits in the hands of Van Schaick & Co. and of Hallgarten & Co.? The case of Smith v. Orser, 43 Barb., 187, announces the same doctrine as Holl y. Hinton, supra. In Smith y. Orser, partnership property—tangible property—was seized by the sheriff under an attachment issued against a portion of the members of the firm, and the firm brought replevin against the sheriff, and this court, at general term, held that the property "could be seized on attachment, because it was executionable property, and that the goods, being in the custody of the law, could not be taken from the sheriff, by an action to recover their possession. The court did not intend to overrule the cases reported in 16 Johns., 102, and 7 How. Pr., 384, supra, and 7 How. Pr., 229.
If the balances and credits in the hands of the Hew York brokers cannot be reached by an execution issued on a judgment against the Fishers, the motion itiust be denied; otherwise, it must be grantedand this, as I understand it, is the test established by the numerous cases before cited, out of this State, as well as by the reported cases in this State. What was said by Leoxabd, J., in__Smith v. Orser, supra, about Goll v. Hinton overruling Sears y. Hearn, was not necessary in the decision Of the cause, was not concurred in by the court, and was said without bearing in mind that the property in Smith y. Orser was executionable, while that in Sears y. Hearn—being account books—was not. I think it is perfectly clear that the plaintiff cannot levy an execution upon, and under it sell the interest of the *381 Fishers in,, the balances and credits in the hands of their New York brokers.
Upon another ground, I think the levy of the attachment must be set aside and discharged. The margins and securities held by the New York brokers belong to the customers of the Baltimore firm, and the New York brokers have notice of this fact. The property belongs, then, to the Baltimore customers, after they shall have accounted with their immediate agents, the Balti-' more firm; and before that can be done, there must be an accounting between the Baltimore firm and their brokers in New York; and for the purpose of ascertaining what balance or credits, if any, have been attached, there must be an accounting between the New York brokers and the Baltimore firm, between the latter and their customers, and then, finally, between the members of the Baltimore firm ; and the surplus, if any, after a statement of the copartnership matters, may be applied to the payment of the indebtedness of the Fishers, if any, to the plaintiff. This statement alone, in my opinion, shows that this possible surplus cannot be attached in an action against the Fishers.
The importance, and to some extent, the novelty of the question in this State, as well as the ability and learning displayed on the argument, have induced me to examine with great care the questions involved; and although somewhat different from my first impression, I do .not regret the conclusion at which I have arrived. The plaintiff has already sued the Fishers in Baltimore, where all the parties reside, for the same cause of action, and the action is still pending and undetermined. There is no question made as to the ability of the Fishers to respond to any judgment which may be recovered against them. Technically, the alleged conversion occurred in Maryland, and our courts have in some instances heretofore refused to take cognizance of actions to recover damages for torts committed in a sister State. We are overburdened now by the amount of litigation *382 constantly increasing and accumulating ; and while jurisdiction should be entertained of parties and actions when brought within existing rules and jurisdictions, I think we should not' extend it, especially in a case like this, for which I find ho precedent. If the attachment can operate as against the balances and credits in the hands of Van Schaick & Co. and Hallgarten & Co., the precedent thus established may lead to disastrous consequences, in view of the numerous financial transactions,' involving undoubtedly many millions of dollars, at times occurring daily within this city. These Hew York brokers, if their balances can be attached, are tied up ; they cannot sell the securities, which may decline in value pending this litigation; nor can they dispose of them, because of insufficient margins. Thus, at a glance can be seen the very serious consequences which will result to business and financial transactions-in this city, if the plaintiff’s views prevail. These considerations are proper when disposing of a question involving a principle of great importance, and which may become a precedent. It must not be understood that I invite discrimination on the part of the courts against residents of sister States. Far from it. I intend, by the observations which I have made, to establish a rule which will work harmoniously with the interest of all, consistently with the interest of all, without discriminating in behalf of non-residents against those carrying on here, in part, the financial transactions of this great financial and commercial emporium; and although they are not parties to this action, if injured they are entitled to relief (Code, § 229; Furman v. Walter, 13 How. Pr., 350; Re Griswold, 13 Barb., 412). In my opinion the motion must be granted. Let an order be entered setting aside the service of the attachment onVan Schaick & Co. and Hallgarten & Co., and directing that the balances, credits, effects, stocks, bonds, gold and other securities in their hands to the credit- of or in account with W. Fisher <& Sons, be released and discharged *383 from the lien, effect and operation of the said attachment, and notice thereof, to the same extent as though the same had never "been issued or served. The attachment itself cannot be set aside.