D. HILLMAN and others *v.* W. F. MOORE and others.

## October Term, 1877.

ESTOPPEL — PERSONS HOLDING THEMSELVES OUT AS PARTNERS — JOINT AND SEPARATE CREDITORS. — If two persons, who are not in fact partners, hold themselves out to certain creditors as partners of a stock in trade, so as to become liable to them as such, although the stock belongs exclusively to one, the rights of these creditors would rest upon estoppel which would be personal to the parties bound, or their privies, not upon a lien on or equity in the stock, to be worked out through the parties; and, therefore, in a controversy between such creditors and a purchaser of the stock at execution sale, under a judgment against the actual owner of the goods as the sole proprietor, the purchaser would have the better right.

EXECUTION — LEVY ON BOOKS, NOTES, AND ACCOUNTS. — A direct levy of an execution against a person in business, on his books, notes, and accounts, is a nullity, and a sale thereunder would communicate no title to the purchaser.

*N. D. Malone,* for complainants.
*Frazer,* for defendants.

THE CHANCELLOR: — In the year 1868, the defendants W. F. Moore and J. H. Collins were partners in the tinware business, at Nashville, under the firm-name of Moore, Collins & Co., and so continued until October, 1871, when Moore bought out Collins, and continued the business, under the name of W. F. Moore & Co., until closed out by the sheriff, in February, 1876. In October, 1873, the defendant M. O.

Lightfoot was employed by Moore as clerk, having previously loaned Moore about $1,400. Afterwards, it was agreed between them that Lightfoot might become a partner by raising money sufficient to purchase one-half the stock; which was never done, and he continued to act as clerk until sale by the sheriff, in February, 1876. In the meantime, however, there can be no doubt that both Moore and Lightfoot so acted as to hold the latter ·out as a partner, and make him liable as such, one of the complainants having actually recovered a judgment against both as partners, and all of them being clearly entitled to a similar recovery. On February 4, 1875, the defendant Collins recovered judgment against W. F. Moore for $2,900 and costs, on one of the notes given for the purchase of Collins's interest in the business in 1871. Execution issued on this judgment, and was, on February 3, 1876, levied on the " entire interest of W. F. Moore in and to all the stock of merchandise, and fixtures of every kind, and also the books, notes, accounts, and judgments in the house No. 37 North Market Street, belonging to W. F. Moore, or W. F. Moore & Co.," referring for particulars to an attached memorandum. Moore having waived any advertisement, " the interest of W. F. Moore as above described " was, on February 8, 1876, sold by the sheriff, in block, to the defendant Collins for $2,300, who afterwards sold it to the defendant Pleasant Smith. On March 25, 1876, the original bill was filed by the complainants, as judgment-creditors of W. F. Moore & Co., on return of execution *nulla bona*, as well for themselves as for all other creditors of W. F. Moore & Co., against Moore, Lightfoot, Collins, and Smith, to reach the property thus sold and bought, as partnership property, upon the ground that the purchasers at the execution-sale acquired only the interest of Moore as an individual; which, they insist, would be the surplus, if any, after paying the partnership debts. The judgments of these complainants were recovered on March 7, 1876, upon obligations of W.

F. Moore & Co., but by service of process on Moore alone. The complainant Haggerty, who came in afterwards by petition, recovered his judgment on June 15, 1876, by service of process on both Moore and Lightfoot, execution thereon having issued and been returned *nulla bona.*

If, in point of fact, Moore and Lightfoot had been partners, there can be no doubt that the sale of Moore's interest alone in the partnership property, under a judgment against him for an individual debt, would have clothed the purchaser with that interest as of the date of the levy. But the interest of the individual partner, and, consequently, of the purchaser, is only what remains after the settlement of the partnership accounts, and, of course, after the payment of the partnership debts. *Taylor* v. *Fields,* 4 Ves. 396; *Matter of Smith,* 16 Johns. 102; *Haskins* v. *Everett,* 4 Sneed, 531; *Knight* v. *Ogden,* 2 Tenn. Ch. 477. In that view, the rights of the parties would have been clear. For, although Lord Eldon said, in 1801, in *Ex parte Ruffin,* 6 Ves. 127, that creditors of a partnership had "no lien upon or interest in" the effects of the partnership, "in point of law or equity," the reason being, as put by this eminent judge, with unanswerable force, that, if the law were otherwise, "the consequence would be that no partnership could ever arrange its affairs;" and, although the Master of the Rolls, in 1819, in *Campbell* v. *Mullett,* 2 Swans. 575, echoed the expression, with the variation that "they have no lien, but something approaching to a lien," yet both of these distinguished judges announced the principle in connection with the assertion of the right of the creditors to acquire a lien by suit. "They" (the creditors), says Lord Eldon, "had power of suing, and by process creating a demand that would directly attach upon the partnership effects." "They have," says Sir Thomas Plumer, "something approaching to a lien,—that is, a right to sue, and, by judgment and execution, to obtain possession of the property." The general doctrine thus enunciated by him was

rigidly adhered to by Lord Eldon in *Ex parte Williams*, 11
Ves. 4, *Ex parte Rowlandson*, 2 Ves. & Bea. 173, and
other cases. It has, with the peculiar phraseology of the
Master of the Rolls, touching the creditor's right being
" something approaching to a lien," been adopted by the
text-writers and repeated by the courts. It has been
accepted by our Supreme Court in *Fain* v. *Jones*, 3 Head,
308, *House* v. *Thompson*, 3 Head, 512, and *Furman* v.
*Fisher*, 4 Coldw. 631. As a consequence of the power
of disposition of the partners to " arrange their affairs,"
the partner himself will lose his lien, and, *à fortiori*, the
creditor his " something approaching to a lien," by a sale
of his interest even to a copartner. *Ex parte Ruffin*, 6
Ves. 119 ; *Smith* v. *Edwards*, 7 Humph. 106 ; *Croone*
v. *Bivens*, 2 Head, 339. The creditor's right is deriva-
tive, and if the partner deprive himself of the right, the
creditors can have none through him. But as long as the
right or equity of the partner to have the partnership
effects appropriated to the partnership debt continues, the
creditors may, by suit, judgment, and execution, " obtain
possession of the property." If, therefore, Moore and
Lightfoot had really been partners, and the sale under Col-
lins's execution had been only of Moore's interest, the right
of the complainants, as creditors of the firm, would have
been clear to levy their executions on the property in the
hands of the purchaser, and sell it. *Menagh* v. *Whitwell*,
52 N. Y. 47 ; *Campbell* v. *Mullett*, 2 Swans. 575. Their
right to come into equity seems to be equally clear. 2
Story's Eq. Jur., sec. 1253 ; *Fain* v. *Jones*, 3 Head, 308 ;
*Collins* v. *Hood*, 4 McLean, 186.

The difficulty in this case is, that both Moore and Light-
foot deny that there was any partnership ; and the other
testimony, while it tends to show that Lightfoot so held
himself out to the world, and was so held by Moore, as to
make him liable to the complainants as a partner, does not
disprove the denial of the parties. If I were satisfied, from

the record, that Lightfoot had been a partner, in point of fact, I would treat his subsequent denial as fraudulent, and would not permit it to affect the rights of the creditors. But I am of opinion that he never was a partner, although he has made himself liable as such. In this view, as between him and Moore, he never had any interest in the property of W. F. Moore & Co.; and, having no interest, and consequently no lien, it seems to follow logically that the creditors could derive no rights through him. The correctness of such a conclusion was conceded in the analogous case of *Kelly* v. *Scott*, 49 N. Y. 599, 595.

But it was equally held in that case, and upon the plainest principle of right, that the real owner of the property had estopped himself to deny that persons associated with him as partners, and so held out to the world by him, were not partners. The creditors who had dealt with the firm, under the belief, superinduced by the acts of all the parties, that they were partners, were entitled to rely not only upon the personal responsibility of all, but upon the equitable security in the partnership effects to be worked out through them. It was a new application of the growing doctrine of equitable estoppel, in the good sense and justice of which, to the extent it was then carried, I fully concur. The estoppel was held to be binding upon the real owner of the property, and, of course, upon his assignee in bankruptcy, who stepped into his shoes. Rev. Stat. U. S., sec. 5044; *Cook* v. *Tullis*, 18 Wall. 332; *Moore* v. *State Ins. Co.*, 2 Tenn. Ch. 384.

The contest in this case, however, is not between the creditors of the supposed firm and the real owner, or his assignee in bankruptcy. It is between such creditors and a *bonâ fide* creditor of the owner, who has acquired a legal right by levy and sale before the creditors had secured a lien by judgment and execution, or judgment and bill filed. The defendant Collins was a judgment-creditor of Moore as early as February 4, 1875, by judgment upon one of the notes given by Moore to him in purchase of his interest in

the stock and trade in question, and had executed this judgment previous to the recovery of judgments by the complainants. If the property sold had been the property of a firm composed of Moore and Lightfoot, the complainants would, notwithstanding the sale, have had the better right, for the purchaser would only have taken Moore's interest, subject to a partnership account. In point of fact, the property was the property of Moore alone, Lightfoot having no interest in it. If it be conceded that neither of these persons could dispute the fact that the effects were those of a partnership of which they were members, the rights of the partnership creditors would rest upon the estoppel, not upon an actual lien or equity; and an estoppel is personal to the party bound, or one in his shoes. Lightfoot never had such an interest in the property as to raise a lien or equity in his favor through which the creditors could claim. He had simply become liable personally as a partner. The effect of such a *status* of a party came before the court in *Hamper, ex parte*, 17 Ves. 403. "It is clear," says Lord Eldon, "that a man may not be a partner, as between himself and another, though he must be so considered with reference to third persons; but was it ever decided that, on that ground, that he is a partner as to third persons, he has a property in the effects of the partnership?" His lordship's inclination was against the right of creditors to sue out a joint commission in bankruptcy in such a case, where the property was solely in one, and he expressly held that it should not issue where separate commissions had already been taken out against each, on which one of them had obtained a certificate, then before him for allowance. So, in the case of a dormant partner, the paramount equity of the joint creditors will not prevail against the creditors of the acting partner. *Norfolk, ex parte*, 19 Ves. 455; *Cammack* v. *Johnson*, 1 Green Ch. 169. The prior right of a partnership creditor to be paid out of the common property, in preference to a separate creditor of either of the partners

does not exist in such case. *French* v. *Chase*, 6 Greenl. 166; *Lord* v. *Baldwin*, 6 Pick. 348. The individual ·creditor of the acting partner, upon a transaction outside ·of the business, may proceed against the effects of the active partner, used in the business, and stand upon an equality with a creditor whose claim originates in the business, and he has the same equality in the event of bankruptcy. These :principles and decisions must govern the case before us. It does not appear that the defendant Collins was aware ·that Lightfoot was being held out as a partner. As to him, Lightfoot was a dormant partner. He has become bound :as a partner to the complainants, by acts originally based upon the expectation that he would become a partner. I find no legal ground to stand upon in order to give the creditors to whom he had thus become bound a preference over the creditors of Moore alone, who knew nothing of his ·connection with the business. The parties must stand upon their legal rights. It is a race of diligence, and he who is first in time becomes first in right. So far as the realty, fixtures, and chattels are concerned, which were sold under ·Collins's execution, the purchaser must be held to have acquired a good title, superior to that of the complainants. The levy was upon the " interest " of Moore, and, no other person having any interest therein at the time except Moore, ·the purchaser acquired the absolute title.

It is different as to the books, notes, accounts, and judgments. If the levy had been on the right or interest of an individual, as the partner of a firm composed in reality of more than one person, the books, notes, and accounts would neither improve the levy nor invalidate it; for all the purchaser would get would be the interest of the partner after :a partnership settlement, in which the books, notes, and accounts would be taken into consideration. 2 White & Tudor Ld. Cas. 410. But a levy upon property as the property of the debtor, although it may belong to the business ·carried on by the debtor, must be governed by the rules of

law applicable to levies on the property of an individual. Choses in action, and especially such as are evidenced by a book account, are not, by the common law, subject to seizure and sale by execution. Freem. on Ex., sec. 112. In this state, an execution runs against the "goods and chattels" of the defendant, and has only its common-law effect, except where changed by statute. It may be levied upon the choses in action of a corporation, by the Code, sec. 3037. The choses in action due the debtor may also be reached by execution by garnishment (Code, sec. 3087 *et seq.*), or by bill in this court. Code, sec. 4283 *et seq.* But a direct levy upon them is a nullity, and conveys no interest to the purchaser. To the extent of the "books, notes, accounts, and judgments" belonging to W. F. Moore, and in the hands of the defendants Collins and Smith, received under the execution-sale and subsequent transfer, the complainants may have an account, for the benefit of themselves and other creditors, including the defendant Collins, to the extent of the balance due him. The costs will be paid out of the fund thus derived, if sufficient; and if not, equally by the parties, — the complainants one-half, and defendants the other half.